## ANNE ROSMO v. AMHERST HOLDING COMPANY AND OTHERS.
## A. D. KLEINMAN AND ANOTHER, APPELLANTS.[1]

December 28, 1951.

No. 35,535.

---

[1]Reported in 50 N. W. (2d) 698.

*Mordaunt & Mordaunt,* for appellants.
*Harroun, Anderson & Poseley,* for respondent.

CHRISTIANSON, JUSTICE.

This is an action for personal injuries sustained by plaintiff as the result of a fall in a private alleyway owned and maintained by defendants. The jury found for plaintiff, and defendants appeal from an order denying their alternative motion for judgment or a new trial. The amount of the verdict is not questioned.

At all times pertinent herein, defendant A. D. Kleinman and defendant R. A. Haeussler (now represented by the administratrix of his estate) owned and operated the Lennox Hotel[2] located on the southeast corner of Fourth and Washington avenues in the city of Minneapolis. Plaintiff was a tenant of the hotel. She had resided in the hotel for six or seven years prior to the accident.

The hotel is located in two three-story units. One unit fronts on Washington avenue and is known as the main hotel; the other unit is in back of the main hotel and fronts on Fourth avenue. It is known as the annex. Although the main hotel and the annex are separated by a private alley about 12 feet wide, there is a runway above the alley connecting both the main hotel and the annex at the second-floor level. This runway gives the occupants of each unit access to the other and thus gives the hotel the character of a single building. These two units are together known as the Lennox Hotel. The Lennox Hotel has nine stores, all on the ground floor, and 160 rooms for guests, all on the second and third floors. There is an entrance to the main hotel on Washington avenue and another on Fourth avenue just north of the alley. The annex has one entrance which is south of the alley on Fourth avenue.

---

[2]Although called a hotel (and it will hereinafter be referred to as such), the record and photographic exhibits indicate that in reality it is a large tenement house.

The private alley, the entrance to which is on Fourth avenue, lies between the main hotel on the north and the annex on the south and is about 70 feet long. It ends in a courtyard behind the two units of the hotel. In the alley is a drain covered by a grated cover. The drain is about 29 feet from the rear of the annex and about 41 feet from the entrance to the alley. The annex wall bordering the alley on the south has no doors in it. The main hotel wall bordering the alley on the north does have a door in it which leads to one of the ground-floor business establishments. Both units have metal fire escapes on the walls adjacent to the alley, but they are of the type which hang some distance above the ground. There is also a wooden combination stairway and fire escape which leads directly from the upper floors of the main hotel into the courtyard.

The ground-floor stores have rear doors which open onto the courtyard. The tenants of these stores use the courtyard for deliveries. Trucks enter the alley on Fourth avenue and drive between the two units into the courtyard, where they make deliveries through the rear doors of the business establishments. The trucks then leave through the same Fourth avenue entrance, as it is the only means of ingress and egress. There are also eight or nine garages in the rear or east end of the courtyard. The garages are built solidly together, but between them and an adjoining building there is a 42-inch opening which leads to the property of a third person and eventually to Fifth avenue. At the time of the accident, all garages were rented by two of the tenants of the ground-floor businesses, who used them for parking and storing. One of these tenants sublet part of his garage space to others who were strangers to the hotel.

Plaintiff, then about 58 years of age, lived on the second floor of the annex. Her apartment was in the rear of the unit and overlooked the alley. The apartment next to hers overlooking the alley at the front of the unit was occupied by William Nugent.

The accident occurred on February 21, 1948, about 9 p. m. Plaintiff had purchased some meat during the day, and on returning to the hotel went to Nugent's room, where she placed the package

on the sill of a window overlooking the alley. This was done to prevent the meat from spoiling by keeping it in a cool place. Shortly before 9 p. m. it was discovered that the package left on the sill was gone, and plaintiff assumed that it had fallen into the alley. To recover the package, she went down to the street through the annex entrance on Fourth avenue, walked north on Fourth avenue to the alley, and then turned to the right into the alley. She testified that while walking in the alley in search of the package of meat the heel of her shoe caught in a broken tooth in the grating which covered the drain in the alley, and that she fell, twisting her leg. As a consequence, she sustained a broken hip which necessitated surgery.

After both sides had rested at the trial, defendants moved for a directed verdict in their favor on the grounds that (1) no actionable negligence on their part had been shown, and (2) plaintiff was guilty of contributory negligence as a matter of law. The trial court denied their motion and submitted the issues of negligence and contributory negligence to the jury. However, the motion of defendant Amherst Holding Company, a corporation, for a directed verdict in its favor was granted, because it conclusively appeared that in 1941 defendants had purchased the premises in question from the corporation under contract for deed and that since that time defendants had the exclusive possession and control of said premises.

The sole question raised on appeal is whether the jury's finding of liability on the part of defendants is justified by the evidence.

Defendants contend: (1) That, as a matter of law, plaintiff was a mere licensee at the time and place of her injury, and they owed no duty to tenants of the main hotel and the annex such as plaintiff to maintain the alley in reasonably safe condition; and (2) that plaintiff was contributorily negligent as a matter of law.

■ The solution of the problem presented by this case lies in the application of the general rule stated in Restatement, Torts, § 360,[3] as follows:

---

[3]See, also, 4 Dunnell, Dig. & Supp. § 5369; 32 Am. Jur., Landlord and Tenant, §§ 687, 688; 52 C. J. S., Landlord and Tenant, § 417(b).

"A possessor of land, who leases a part thereof and retains in his own possession any other part *which the lessee is entitled to use as appurtenant to the part leased to him,* is subject to liability to his lessee * * * for bodily harm caused * * * by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

"*Comment:*

\* \* \* \* \*

"*c.* The rule stated in this Section applies not only to the hall, stairs, elevators and other approaches to the part of the land leased to the lessee as a flat, office or room in a tenement or boarding house, *but also to such other parts of the land or building to the use of which by the express or implied terms of the lease the lessee is entitled,* usually in common with other lessees, such as a bathroom in a boarding house and the roof or yard of a tenement building or apartment house." (Italics supplied.)

Since it is conceded on appeal that defendants retained control of the private alleyway and that their failure to exercise reasonable care with respect to the cover on the alley drain was the proximate cause of plaintiff's injury, the principal question for decision is whether the evidence justified a jury finding that defendants, as landlords, owed plaintiff and other upstairs tenants a legal duty to maintain the alley in a reasonably safe condition. The answer to this question is dependent upon whether such tenants had the right to use the alley as appurtenant to their several tenements. Since the evidence did not disclose that such tenants were ever expressly excluded from using the alley between the two hotel units by their leasing agreements or otherwise, the trial court was of the opinion that the evidence permitted conflicting inferences as to whether plaintiff and the other upstairs tenants were impliedly entitled to use the alleyway in common with defendants' first-floor tenants. Accordingly, it submitted this question to the jury.

■ Defendants contend, as a matter of law, that their upstairs tenants were not entitled to use the alleyway; consequently, that they owed no duty to plaintiff to exercise reasonable care with respect to its condition. In support of their position, defendants point out that plaintiff had been a resident of the hotel for six or seven years and never had occasion to use the alley before the night in question. Defendant Kleinman testified that the alley and courtyard were only for the use of the ground-floor tenants in connection with deliveries incident to their businesses or for their use as renters of the garages. Also, there was testimony to the effect that defendants had no knowledge that the occupants of the second- and third-floor apartments ever used the alley and courtyard. While the foregoing testimony was of probative value in negating a finding that tenants such as plaintiff were impliedly entitled to use the alleyway, it does not stand alone. Defendants' agent, Robert Kleinman, who testified that he had never heard of anyone other than ground-floor tenants using the alley, admittedly spent only 15 minutes to one hour a day on the premises two to three times a week. Furthermore, despite defendants' contention that the alley was only for the use of the ground-floor businesses, there were no signs to that effect, and there is nothing in the evidence to indicate that defendants ever informed plaintiff or any of their upstairs tenants that they were not entitled to use the alleyway. In fact, it does not appear that defendants had ever told anyone prior to the accident that the use of the alley was restricted to ground-floor business tenants. The jury could properly infer therefrom and from the fact that there was a total of 160 tenements located on the second and third floors that the upstairs tenants had the implied right to use the alley whenever necessary for the accomplishment of such purposes as reasonably and normally should have been contemplated where so many people lived in such close proximity to the alley. In this connection, the jury also could take into consideration plaintiff's exhibit D. This was a photograph of the alley and courtyard. It shows a substantial wooden stairway on the back of the main hotel unit leading from the upper

floors to the courtyard. Although the stairway is referred to as a fire escape, it obviously could be used by upstairs tenants as a means of ingress and egress from the main unit to Fourth avenue by way of the alley.

The record discloses the fact that there was a great deal of activity in the alley and courtyard. Admittedly, deliveries were made to the ground-floor tenants from the courtyard and alley. The ground-floor tenants and their servants and persons engaged in making the deliveries made frequent use of the alley. Robert Kleinman testified that he used the alley on occasions, as did Mrs. Myrtle Schultz, manager of the Lennox Hotel building. William Nugent testified that he often used the alley and courtyard in going to Fifth avenue by walking through the gap between the garages in the east end of the courtyard and an adjoining building. He further testified that everybody used that route. From her window, plaintiff had observed people walking through the alley to get to Fifth avenue. Harry Horwitz, a ground-floor tenant at the time of the accident, testified that persons using the courtyard garages used the alley to get to their cars, and that other persons used it to get back to the street. There was also evidence that defendants had made some effort in the past to keep the drain in the alley free from defects and that their caretaker had on occasion attempted to keep it free from ice by the use of a crowbar. Also, plaintiff's exhibit E, a picture of the drain cover showing its condition at the time plaintiff was injured, indicates that makeshift repairs had been made to the cover in an effort to cover over some of the openings in the broken grating with a board. According to witness Horwitz, the grating had remained in this condition for at least three or four years.

The record and exhibits disclose sources from which different conclusions might reasonably be drawn as to whether defendants' second- and third-floor tenants such as plaintiff were entitled to use the alley. Although the question presented is a close one, we are of the opinion that the evidence reasonably supports the finding implicit in the jury's verdict that plaintiff was entitled to use the

alley for the purpose she did at the time she was injured.  Cf. McGenty v. John A. Stephenson & Co. 218 Minn. 311, 15 N. W. (2d) 874; Bowser v. Artman, 363 Pa. 388, 69 A. (2d) 836, 12 A. L. R. (2d) 213; Stabelli v. Somerton B. & L. Assn. 343 Pa. 460, 23 A. (2d) 477.

■ Defendants contend further that the general rule as to contributory negligence set forth in Huyink v. Hart Publications, Inc. 212 Minn. 87, 89, 2 N. W. (2d) 552, 553, is applicable to the facts in this case.  The court there stated:

"A person who proceeds in an unfamiliar situation where by reason of darkness he is unable to observe where he is going and what may be the obstructions to his safe progress is, in the absence of the stress of special circumstances, guilty of contributory negligence as a matter of law upon the ground that by such conduct he exposes himself to unreasonable risk of injury."

The application of the foregoing rule presupposes a greater degree of darkness than was established in the instant case.  The evidence as to the amount of natural light available and the amount of light shed on the alley from surrounding windows, store signs, and street lights was conflicting.  Defendants also point to the icy condition of the alley when plaintiff entered it as evidence of contributory negligence.  But here again there is a conflict in the evidence as to the extent to which the alley was covered with ice and snow and the resulting difficulty which plaintiff encountered in walking in the alley.  At most, the question of her contributory negligence was one of fact for the jury.

Accordingly, there was no error in denying defendants' alternative motion, and the order appealed from should be affirmed.

Affirmed.