Patricia **SPITZAK**, individually and as Natural Parent and Guardian Ad Litem for Anthony Spitzak, a minor, Appellants,

v.

The **HYLANDS**, **LTD.**, et al., Respondents,

Parents of Terry Vale, et al., Defendants.

No. C3-92-2217.

Court of Appeals of Minnesota.

May 25, 1993.

Review Denied July 15, 1993.

David A. Shulman, Mary Mason, Rochester, John Sperry, Eden Prairie, for appellants.

Scott Ballou, Leo I. Brisbois, Stich, Angell, Kreidler & Muth, P.A., Minneapolis, for respondents.

James Carlson, Muir, Heul, Carlson & Spellhaug, P.A., Rochester, Timothy Waldech, Minneapolis, for defendants.

Considered and decided by PETERSON, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant Patricia Spitzak filed suit on behalf of her son Anthony Spitzak against respondents The Hylands, Ltd. and Pembco. In her negligence claim, Spitzak contends respondents failed to provide adequate security to protect her son, a tenant, against foreseeable injury caused by third persons.

Respondents moved for summary judgment, arguing they had no duty to protect because there was no "special relationship" between the parties and the criminal acts were unforeseeable. The trial court granted summary judgment in favor of respondents. We affirm.

## FACTS

Appellant Patricia Spitzak and her children, Anthony, age 10, and Amy, age 13, reside at The Hylands in Rochester, Minnesota. The Hylands is a complex of townhouses owned by respondent The Hylands, Ltd., and managed by respondent Pembco. The relationship between respondents and appellant is that of landlord-tenant.

On July 27, 1988, Anthony was upstairs in his room playing Nintendo with two other boys. His mother had gone out for the evening and his sister was downstairs with a friend. Chad Quandt, a friend of Anthony's, was riding his bicycle across the grounds of The Hylands on his way to the Spitzaks' residence when he met four teenagers. The teenagers, who had been drinking, threatened Chad and tried to beat him up. Chad fled to the Spitzaks' apartment and told Amy Spitzak that the teenagers attacked him. Amy went outside to investigate.

While still upstairs, Anthony overheard the teenagers yelling for Chad to come out of the apartment. Fearing for Chad's safety, Anthony went downstairs, locked the door, and began shutting all the windows. While Anthony was shutting one of the windows, Terry Vale struck the window with his fist from the outside and broke it. A shard of glass from the broken window flew into Anthony's eye. As a result, Anthony's eye had to be surgically removed.

Appellant brought this action to recover damages for injuries sustained by Anthony. On these facts, the trial court found there was no special relationship between Anthony and respondents that would give rise to

a duty to protect Anthony from harm caused by third parties. Furthermore, the trial court also found the third party act resulting in harm to Anthony was not foreseeable. The trial court granted summary judgment in favor of respondents.[1]

## ISSUE

Did the trial court err by granting summary judgment in favor of respondents?

## ANALYSIS

When reviewing summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

■ To maintain a claim for negligence, a plaintiff must show: (1) a duty; (2) a breach of that duty; (3) a causal connection between breach of duty and injury; and (4) injury in fact. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982) (quoting *Schmanski v. Church of St. Casimir*, 243 Minn. 289, 292, 67 N.W.2d 644, 646 (1954)). Generally, the existence of a legal duty is for the court to determine as a matter of law. *Hellman v. Julius Kolesar, Inc.*, 399 N.W.2d 654, 656 (Minn.App.1987).

■ In the absence of a special relationship, there is no duty to control the conduct of a third person to prevent him from causing physical harm to another. Restatement (Second) of Torts § 315 (1965); *see also Harper v. Herman*, 499 N.W.2d 472 (Minn.1993). "Whether a duty is imposed depends, therefore, on the relationship of the parties and the foreseeable risk involved." *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 168–69 (Minn.1989).

> If the law is to impose a duty on A to protect B from C's criminal acts, the law usually looks for a special relationship between A and B, a situation where B has in some way entrusted his or her safety to A and A has accepted that entrustment. This special relationship also assumes that the harm presented by C is something A is in a position to protect against and should be expected to protect against.

*Id.* at 168 (describing the special relationship doctrine).

■ The court has recognized landlord liability for criminal acts of third parties in certain situations. *See id.* (under the special relationship doctrine, owner and operator of commercial parking ramp facility owed a duty to customers to provide adequate security to deter criminal activity in the ramp); *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907 (Minn.1983) (landlord liability was based upon negligence in hiring where resident manager with criminal history entered tenant's apartment using a passkey and raped tenant); *Vermes v. American Dist. Tel. Co.*, 312 Minn. 33, 41, 251 N.W.2d 101, 105 (1977) (landlord liability was based on failure to point out facts tending to make the premises insecure for the lessee's jewelry business).

In *Erickson*, the court held that the lessor of a commercial parking ramp has a duty to provide adequate security for the protection of its customers. In finding the defendants owed a duty to protect, the court found the general characteristics of a parking ramp

> present a particular focus or unique opportunity for criminals and their criminal activities, an opportunity which to some degree is different from that presented out on the street and in the neighborhood generally.

*Erickson*, 447 N.W.2d at 169. In other words, the general characteristics of a parking ramp can actually encourage crime, exposing the public to an unacceptably high risk.

It is important to note that the *Erickson* court did not impose a duty on all commercial landowners. Rather, the court limited its holding to the particular facts of that case. *Id.* at 169–70. The court applied a cost-benefit analysis to determine whether

---

1. Any issue involving lawsuits between appellants and the four teenagers are not before the court on this appeal and do not affect our analysis.

the parking ramp posed an unacceptable risk to the public which ought to be born by the defendants. Under the cost-benefit analysis, the critical inquiry is "how much risk is an acceptable risk for members of the public?"

Appellant argues that the policy considerations in *Erickson* support a finding that a special relationship exists in this case. The trial court rejected this argument on the grounds that apartment complexes such as The Hylands do not present the "unique opportunity for criminals and criminal activity" that a parking ramp does. In its memorandum, the trial court noted,

> The apartment complex owned by the defendants is not comparable to a dimly lit, relatively deserted, parking ramp generally open to anyone who wishes to do wrong.

We agree.

Although the standard for delineating acceptable and unacceptable risks has not been clearly defined, the decision in *Erickson* indicates that, at the very least, the risk must be greater than "that presented out on the street and in the neighborhood generally" before a duty will be imposed. *Erickson*, 447 N.W.2d at 169. In this case, appellant does not claim that the apartment complex owned and managed by respondents presents a "particular focus or unique opportunity for criminals and their criminal activities." *Id.* Nor does appellant argue that tenants at The Hylands are exposed to a greater risk than that in the neighborhood generally. The trial court properly found that appellant failed to meet its threshold burden of establishing the existence of a special relationship duty.[2] The evidence does not establish a basis for a special relationship giving rise to a duty on the part of respondents to protect appellant's son from the criminal acts of third persons.

■ Appellant also argues that the decision in *Erickson* shifted the focus from the requirement of a special relationship to the foreseeability of harm. The trial court appropriately rejected this argument. In *Erickson*, the court expressly upheld the general rule that there is no duty to protect in the absence of a special relationship. *Erickson*, 447 N.W.2d at 168–69; *see also Pietila*, 362 N.W.2d at 332 ("The question is not simply whether a criminal event is foreseeable, but whether a *duty* [arising out of a special relationship] exists to take measures to guard against it"). Appellant's argument fails to acknowledge that the question of foreseeability is subsumed in the "special relationship" rule. That is, as the court expressly stated in *Erickson*, the test to determine whether a duty to protect is imposed (pursuant to the special relationship doctrine) depends upon both the relationship of the parties *and* the foreseeability of the risk involved. *See Erickson*, 447 N.W.2d at 168–69.

■ Notwithstanding the lack of a special relationship in this case, the landlord tenant relationship between appellant and respondents may serve to impose some duty of care on respondents. *See, e.g., Rosmo*, 235 Minn. 320, 50 N.W.2d 698 (discussing landlord liability). However, given the facts in the record, the criminal act which resulted in injury to Anthony is not the type of act which respondents could reasonably be expected to prevent. *Cf. Kline v. 1500 Massachusetts Ave. Apartment. Corp.*, 439 F.2d 477, 482 (D.C.Cir. 1970) (landlord had a duty to take "protective measures" to guard against third party criminal acts in the common area of apartment complex where the landlord had notice that tenants were subjected to

---

**2.** It is true that under Minnesota law, landlords may be liable to a tenant "for bodily harm caused to him by a dangerous condition upon that part of the land retained in the landlord's control." *Rosmo v. Amherst Holding Co.*, 235 Minn. 320, 320, 50 N.W.2d 698, 699 (1951). One might argue that an extremely high level of crime in and around an apartment building renders the premises so unsafe as to amount to a "dangerous condition" that the landlord should be required to address. However, the Minnesota Supreme Court has rejected the argument that criminal activity might constitute a "dangerous condition" of the land. *See Pietila v. Congdon*, 362 N.W.2d 328, 333 (Minn.1985) ("A criminal act such as murder or armed robbery committed by a person or persons unknown is not an activity of the owner and does not constitute a condition of the land.")

crime). Nothing in the record suggests that The Hylands is particularly susceptible to roving bands of teenagers looking for a fight with tenants.

 Even where a duty to protect exists, the duty only extends to foreseeable acts. Generally, the issue of foreseeability is for the trial court to decide. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985). The test of foreseeability is whether respondents were aware of facts indicating the tenants were being exposed to unreasonable risk of harm. Or, as stated another way,

> The common-law test of duty is the probability or foreseeability of injury to the plaintiff. As stated by Chief Justice Cardozo, 'The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.'

*Connolly v. Nicollet Hotel*, 254 Minn. 373, 381, 95 N.W.2d 657, 644 (1959) (quoting *Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 162 N.E. 99, 100 (1928)).

 The trial court found that respondents could not have foreseen the teenagers' actions which resulted in injury. We agree. Although appellant submitted some general evidence of reports of crime in the area, there is no evidence indicating The Hylands is a known high crime complex. Nor is there evidence that a series of similar incidents occurred at or around The Hylands which respondents knew of or at least should have been aware. *See Hilligoss v. Cross Cos.*, 304 Minn. 546, 547, 228 N.W.2d 585, 586 (1975) (high crime rate and commission of a series of similar crimes may establish the foreseeability of a criminal act). The harm suffered by appellant was simply not foreseeable. Therefore, respondents owed no duty to prevent that harm.[3]

---

**3.** The issue of foreseeability could also be discussed in the context of causation. In a negligence cause of action, a criminal act of a third party generally serves as an intervening cause sufficient to break the chain of causation. *Hilligoss*, 304 Minn. at 547, 228 N.W.2d at 586. However, if the third person's criminal act was foreseeable, it does not break the chain of cau-

## DECISION

The trial court properly concluded that, on these facts, respondents owed no special duty to protect appellant's son Anthony from third parties. Appellant failed to establish that tenants at The Hylands were subjected to unacceptable risks as the result of third party criminal activity. No special relationship existed between the parties which would have given rise to a duty to protect Anthony. Further, the third party criminal act which caused the injury was not foreseeable to respondents. We affirm the trial court's grant of summary judgment in favor of respondents.

**Affirmed.**

sation. *Id.* Since the third party criminal act was unforeseeable in this case, it was an intervening cause breaking the causal connection between respondents' failure to provide security and appellant's injury. Accordingly, we hold that summary judgment is equally appropriate on the ground that appellant failed to show direct cause.