Juanita Donna ERRICO, Appellant,

v.

SOUTHLAND CORPORATION,
et al., Respondents.

No. C3–93–980.

Court of Appeals of Minnesota.

Dec. 14, 1993.

Review Denied Jan. 27, 1994.

Frederick J. Goetz, Voss and Goetz, P.A., Minneapolis, for appellant.

Scott Ballou, Stich, Angell, Kreidler & Muth, P.A., Minneapolis, for respondents.

Considered and decided by PETERSON, P.J., and DAVIES and SCHULTZ,* JJ.

## OPINION

HAROLD W. SCHULTZ, Acting Judge.

Appellant Juanita Donna Errico (Errico) brought this negligence action against respondents Southland Corporation and several of its employees (Southland). Her complaint alleged that Southland and its employees had a duty to provide for her safety and security, and that Southland had a duty to properly supervise and train its employees in the protection of its patrons.

Errico appeals from the district court's grant of summary judgment to Southland. We affirm.

## FACTS

Sometime after midnight on June 21, 1989, Errico and a friend drove into the parking lot of a 24–hour convenience store located in Minneapolis, Minnesota. At the time, the store was owned by Southland.

Errico made a purchase in the store and left, intending to use a telephone located outside the store. As she was about to use the phone, an unidentified man informed her he had to use the phone. Errico let the man use the phone.

As Errico was walking back toward her parked car, she saw an unidentified female hitting her friend, who had just returned to Errico's car after being inside the store. Errico got into the car and began to drive away. She was pulled from the car and attacked by three unidentified men and one woman. Errico claims that several store employees stood inside the store watching the attack, but that no one called the police or did anything else to try and stop it. She further claims that one employee even locked the store's front door.

After about ten minutes, Errico's assailants got into their car and left. Instead of seeking assistance from the store employees at that point, Errico pursued her assailants for several minutes in her own car, attempting to get a license plate number. She eventually pulled over and was taken to the hospital by her friend.

Stanley Pryor, a store employee who was working that evening, saw the entire assault. He admitted he simply watched and rendered no aid. He stated he did not want to get involved. Pryor acknowledged that the training he had received from Southland had not adequately prepared him to respond to such an assault.

Errico thereafter brought this negligence action against Southland and several of its employees, alleging Southland had a duty to provide for the safety and security of its patrons. Errico's complaint further alleges Southland had a duty to properly manage, supervise and train its employees in the protection of its patrons from criminal assaults by third persons.

Southland moved for summary judgment, arguing that since it had no special relationship with Errico or her assailants, it had no duty to control the acts of those assailants or protect Errico from those acts. Southland further argued it owed no duty to properly supervise and train its employees in the protection of its patrons.

In opposition to Southland's motion, Errico presented evidence showing that convenience

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

stores are characteristically dangerous places with high risks of violent crime to employees and customers. She also presented evidence suggesting that the store involved here actually had a significant level of criminal activity occurring either on its premises or in the immediate vicinity. She further presented evidence establishing that the Minneapolis police had voiced concerns to Southland about the high level of criminal activity at this particular store, about the fact that there was not enough security in and around the store, and about Southland's practice of allowing people to loiter in the parking lot.

In granting summary judgment, the district court concluded that because no special relationship existed between Southland and Errico or her assailants, Southland owed her no duty to either control her assailants or to protect her. Errico appeals.

## ISSUE

Did the district court err in concluding as a matter of law that Southland owed no duty to Errico?

## ANALYSIS

Summary judgment may be granted when there is no genuine issue as to any material fact and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. In considering such a motion, the district court must view the evidence in the light most favorable to the nonmoving party. *Sauter v. Sauter*, 244 Minn. 482, 484–85, 70 N.W.2d 351, 353 (1955).

■ The existence of a legal duty is an issue of law for the court to determine. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn. 1985). A defendant generally has no duty to control the conduct of a third person in order to prevent that person from causing injury to another. *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn.1979). Whether a duty exists depends upon two factors: (1) the existence of a special relationship between the defendant and the third person which imposes a duty to control, or between the defendant and the other which gives the other the right to protection; and (2) the foreseeability of the harm. *Id.; Lundgren v. Fultz*, 354 N.W.2d 25, 27 (Minn.1984).

■ Southland argues that summary judgment was properly granted in this case because Errico failed to show the existence of a special relationship between it and Errico or her assailants. We agree with Southland that this is a threshold question, and that the issue of foreseeability need not be reached when there is no special relationship. *See Spitzak v. Hylands, Ltd.*, 500 N.W.2d 154, 157–58 (Minn.App.1993) (summary judgment properly granted when plaintiff failed to meet threshold burden of establishing existence of special relationship between landlord and tenant which would give rise to duty to protect tenant from "roving bands of teenagers looking for a fight with tenants"), *pet. for rev. denied* (Minn. July 15, 1993). Thus, the evidence presented by Errico relating to whether Errico's injuries were foreseeable is largely immaterial to resolution of the issue involving the existence of a special relationship.

■ A special relationship may be found in situations when one individual has in some way entrusted her safety to another, and the other has accepted that entrustment. *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 168 (Minn.1989). A special relationship also assumes that the harm represented by the third person, or criminal, is something that the other is in a position to protect against and should be expected to protect against. *Id.*

Thus, a duty to protect has been found in a number of special relationships, including that existing between innkeeper-guest, common carrier-passenger, and hospital-patient. *Id.* (citations omitted). Recently, the supreme court extended the duty to protect to the owner-operator of a commercial parking ramp. *Id.* But the court emphasized that the law has been "cautious and reluctant" to impose such a duty upon a business enterprise, and that a mere merchant-customer relationship is generally not enough. *Id.*

The court in *Erickson* examined the following basic public policy considerations: (1) the prevention of crime is a governmental function that should not be shifted to the

private sector; (2) imposition of a duty to protect against the unpredictable conduct of criminals does not lend itself easily to an ascertainable standard of care; and (3) the most effective crime deterrent may be cost prohibitive for both the property owner and customer. *Id.* at 168–69. While these public policy considerations generally weigh against imposition of a duty to protect upon a business owner, the court in *Erickson* nevertheless concluded that such a duty should be imposed in that case. In so doing, the court stated that the general characteristics of a parking ramp facility "present a particular focus or unique opportunity for criminals and their criminal activities, an opportunity which to some degree is different from that presented out on the street and in the neighborhood generally." *Id.* at 169.

■ But in this case, we believe that these same public policy considerations weigh against imposition of a duty to protect, essentially because the general characteristics of Southland's convenience store are substantially different from the parking ramp in *Erickson.* The mere fact that the store in question here is located in a high crime neighborhood does not impose upon Southland a duty to protect its customers from the acts of unidentified third persons. While possessors of land have a duty to maintain their premises in a safe condition, that duty extends to the physical condition of the premises and not to criminal acts of independent third persons. *See Pietila v. Congdon,* 362 N.W.2d 328, 332–33 (Minn.1985) (criminal acts of unknown third persons are not activity of owner and do not constitute condition of land). Here, there is no evidence to suggest that the physical condition of the store premises exposed Errico to an unreasonable risk of harm.

■ Nor is there evidence to suggest that the physical characteristics of the store's parking lot presented a unique opportunity to criminals that was somehow different than the surrounding neighborhood. Unlike the parking ramp in *Erickson,* 447 N.W.2d at 169, the parking lot here is located in a predominantly residential neighborhood adjacent to a busy public street. The lot is open and well-lit, and cars are not left unattended

for long periods of time. The parking lot did not necessarily provide a place in which criminals could "lurk or hide," as in *Erickson.*

The duty advanced by Errico is essentially to provide police protection, a duty that is traditionally vested in the government. To require Southland to protect its customers from criminal acts by third persons would require it to provide a safer environment on its premises than the government can provide to those same customers in the surrounding neighborhood. We do not believe that this is a reasonable expectation for customers to have, nor is it reasonable to expect Southland to provide such protection.

■ In addition, fairness ordinarily requires that an individual be able to ascertain whether a duty is owed and whether that duty has been performed. As noted in *Erickson,* 447 N.W.2d at 169:

[A] duty to protect against the devious, sociopathic, and unpredictable conduct of criminals does not lend itself easily to an ascertainable standard of care uncorrupted by hindsight nor to a determination of causation that avoids speculation.

Any standard of care that would be imposed on Southland in this case would be vague and difficult for Southland to satisfy. *See Pietila,* 362 N.W.2d at 333 ("How can one know what measures will protect against a thug, the narcotic addict, the degenerate, the psychopath, and the psychotic?").

Finally, there is no evidence that the provision of security guards on the store premises would be affordable for either Southland or its customers. Nor is there evidence that security guards or any other measures that might be taken by Southland would actually deter or prevent the type of assault that occurred here. Presumably, Errico considered cost and convenience when she chose to patronize Southland's store. The risk she accepted in doing so was probably an acceptable risk, considering the time of night and the neighborhood in which she chose to shop.

■ Thus, we do not believe that a special relationship existed between Southland and Errico or her assailants, that would be sufficient to impose a duty upon Southland to

protect Errico. Under the facts of this case, it would not be reasonable for a customer such as Errico to entrust her safety to Southland. Nor would it be reasonable to expect Southland to protect Errico against the criminal acts of unknown third persons.

## DECISION

Since no special relationship existed between Southland and Errico or her unknown assailants, summary judgment was properly granted to Southland.

**Affirmed.**

DAVIES, Judge (dissenting).

I respectfully dissent.

There is no affirmative duty on an individual to control the conduct of a third person to prevent harm to another unless a special relationship exists. *Delgado v. Lohmar,* 289 N.W.2d 479, 483 (Minn.1979). (A special relationship may arise where one invites an individual onto one's premises and that individual in some way entrusts her safety to the inviter who, in turn, has accepted that entrustment. *Erickson v. Curtis Inv. Co.,* 447 N.W.2d 165, 168 (Minn.1989); *see also Harper v. Herman,* 499 N.W.2d 472, 474 (Minn. 1993) (special relationship exists between public and possessors of land held open to the public).

I believe that here, Errico successfully established a special relationship that imposed on Southland a duty to Errico—a duty to respond reasonably to criminal activity on its premises.[1]

Southland operated a retail store and, therefore, invited customers onto its premises. Errico was a customer at the time the confrontation began at the pay phone. (Southland shares in the telephone revenues, and Errico had just made a purchase from Southland's store.) Under these circumstances, some minimal duty was owed by Southland and its duty extended, at least, to sounding an alarm by calling 911 when it became aware of criminal activity on its property. That alarm might have minimized Errico's injuries, and, at least, would have helped the police do their job of protecting the public.

I do not suggest that the special relationship here requires Southland to patrol the lot or to provide armed guards; it does, however, require Southland and its employees to keep a proper "lookout" over activities occurring on the "well-lit" parking area. At a minimum, store employees, having discovered unlawful and dangerous activity in the store parking area, should call the police, rather than merely pulling up seats for a ringside view.

Thus, I believe that a special relationship existed between Southland and Errico, and that Southland had a duty to provide minimal, cost-free protection to Errico against these criminal acts of unidentified third persons. While Errico may still have a problem showing that Southland's neglect caused any injury, that issue is for a jury to decide. *Hamilton v. Independent Sch. Dist. No. 114,* 355 N.W.2d 182, 184 (Minn.App.1984).

I would reverse the grant of summary judgment to Southland and allow Errico to proceed with her case.

---

1. I do not find necessary (or even relevant) to this duty or to the level of care required that Southland operated a 24–hour convenience store in a high-crime neighborhood or that the store was often the scene of criminal activity or was the place from which such criminal activity was reported to the police. It is also not relevant that the police had voiced concerns to Southland about the high level of criminal activity at this store, about the fact that there was not enough security in and around the store, and about the store's practice of allowing people to loiter in its parking lot.

It is enough that Southland sought customers and, by lighting its parking area, gave those customers who came some legitimate expectation of increased security.