**Leonard Read SULIK and Tammy Sulik**

v.

**TOTAL PETROLEUM, INC.**

No. 4–93–CV–564.

United States District Court,
D. Minnesota,
Fourth Division.

March 25, 1994.

in October 1982.

David A. O'Connor, O'Connor Law Office, St. Paul, MN, for plaintiffs.

Timothy Robert Thornton, Briggs & Morgan, Minneapolis, MN, Hakan Torbjorn Svensson, Briggs & Morgan, St. Paul, MN, for defendant.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court on defendant's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). The Court heard oral argument on November 10, 1993.

### I.  *Background*

#### A.  *The Crime*

On June 8, 1992, at approximately 1:00 a.m., plaintiff, Leonard Read Sulik, stopped to purchase gasoline at a gas station/convenience store ("Total Mart") located in St. Paul, Minnesota. The premises were owned and operated by defendant, Total Petroleum, Inc. ("Total"), a Michigan corporation. As plaintiff paid for his gasoline, the store was

robbed by armed gunmen. Despite the two store clerks' compliance with the robbers' demands, one of the robbers opened fire, killing both clerks and severely wounding plaintiff and another patron. During the Total Mart robbery, a companion group of gunmen robbed an Amoco station across the street. There were no injuries in the second robbery.

St. Paul police later determined that the two groups of gunmen conspired to perform the simultaneous robberies. Police investigators used a special code marked on goods taken from the Total Mart, and a two dollar bill with a pre-recorded serial number, to help solve the crimes. As a result, all but one of the robbers have been apprehended. The apprehended robbers have been tried, convicted, and sentenced for their crimes.

### B. *The Present Case*

On May 18, 1993, plaintiff, a Minnesota resident, filed a complaint against Total in Ramsey County District Court. Plaintiff alleged that defendant negligently breached a duty to provide for the safety of its patrons by failing to secure its premises to protect him from criminal activity. Plaintiff claims his injury was reasonably foreseeable because defendant knew, or reasonably should have known, that: (1) the business was located in a high-crime area; (2) there had been previous incidents of robbery, assault, and theft on the property; (3) intruders could easily enter and exit the station's parking lot; and (4) future crimes on the premises were likely, unless defendant took steps to ensure the safety of its patrons.

On June 9, 1993, defendant seasonably removed the case to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446. The complaint was amended in December, 1993, to add a claim of loss of consortium by Tammy Sulik, plaintiff's wife.[1]

Defendant moves for summary judgment, claiming that it had no duty to prevent the armed robbery, and that it took reasonable steps to protect its patrons against criminal activity on its premises. Plaintiff responds

that a special relationship existed between Total and its patrons, including plaintiff, which was sufficient to impose upon Total the duty to protect. Plaintiff also argues that genuine issues of material fact exist as to whether Total breached this duty. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332.

### II. *Analysis*

#### A. *Standard for Summary Judgment*

Summary judgment is appropriate where there is no dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The question is whether factual issues exist which may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *Id.* at 248–49, 106 S.Ct. at 2510–11. If the opposing party fails to carry that burden, or fails to make a sufficient showing to establish the existence of an essential element of its case upon which that party will bear the burden at trial, summary judgment should be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Mt. Pleasant v. Associated Electric Cooperative Inc.,* 838 F.2d 268, 273–74 (8th Cir.1988). In reviewing the evidence, the Court must view the facts in the light most favorable to the non-moving party, and give that party the benefit of all reasonable inferences. *St. Paul Fire & Marine Ins. Co. v. F.D.I.C.,* 968 F.2d 695, 699 (8th Cir.1992).

#### B. *The Duty to Protect*

■ In this case, the Court is called upon to determine whether a merchant-customer relationship imposes a duty upon the owner of a gas station/convenience store to ensure the safety and security of its patrons. It is

---

1. For purposes of this Order, this action involves a single plaintiff, Leonard Read Sulik, despite the addition of Tammy Sulik as a named plaintiff.

plaintiff's position that such a duty exists under the circumstances of this case. Defendant disagrees. Based upon Minnesota law, the Court determines that no such duty exists, as there is no special relationship between the owner of a gas station/convenience store and its patrons which imposes such a duty.

■ It is axiomatic that to prevail on a claim of negligence, a plaintiff must show: (1) a duty; (2) breach of that duty; (3) a causal connection between the breach and injury; and (4) injury in fact. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982). Generally, the existence of a legal duty is an issue for the Court to determine as a matter of law. *Carlson v. Mutual Service Ins.*, 494 N.W.2d 885, 887 (Minn. 1993). This is differentiated from the determination as to whether such a duty has been breached, which is ordinarily the province of the jury. *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn.1990).

■ To determine whether a duty to protect is owed between two parties, Minnesota courts look to the relationship of the parties and the foreseeability of the risk. *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 168–69 (Minn.1989). Absent the existence of a special relationship, there is no duty to control the conduct of a third person to prevent him from causing physical harm to another. *Id. See also Spitzak v. Hylands, Ltd.*, 500 N.W.2d 154, 156 (Minn.Ct.App. 1993). The requisite special relationship exists where one party has in some way entrusted his or her safety to another party. The question is, ultimately, one of policy. *Erickson* at 169.

Minnesota courts have found a special relationship, sufficient to require the imposition of a duty to protect, in a very limited number of situations. A special relationship has been held to exist in cases involving the hospital-patient relationship, the landlord-tenant relationship, and the merchant-customer relationship. *See Sylvester v. Northwestern Hosp. of Minneapolis*, 236 Minn. 384, 53 N.W.2d 17 (1952) and *Roettger v. United Hospital of St. Paul*, 380 N.W.2d 856 (Minn. Ct.App.1986) (hospital-patient relationship); *Ponticas v. K.M.S. Investments*, 331 N.W.2d

907 (Minn.1983) and *Vermes v. American Dist. Telegraph Co.*, 312 Minn. 33, 251 N.W.2d 101 (1977) (landlord-tenant relationship); and, *Erickson*, 447 N.W.2d 165 (parking ramp and patron).

It is useful to examine the circumstances under which a special relationship has been found. In *Sylvester v. Northwestern Hosp. of Minneapolis*, a convalescent patient was assaulted by an intoxicated fellow patient. The Minnesota Supreme Court held that, although a private hospital is not an insurer of a patient's safety, the hospital had a duty to protect the injured patient. *Id.*, 53 N.W.2d at 19. The court emphasized the vulnerability of a hospital patient and determined that, because patients entrust their safety to hospitals, hospitals must exercise reasonable care to protect them.

In *Ponticas v. K.M.S. Investments*, a tenant was sexually assaulted after her apartment manager entered her apartment with a landlord-supplied passkey. The Minnesota Supreme Court again found a duty to protect because the tenant had entrusted her safety to her landlord. According to the court, "an employer has the duty to exercise reasonable care, in view of all the circumstances, in hiring individuals who, because of the[ir] employment, may pose a threat of injury to members of the public." *Id.* at 911.

In *Erickson*, a patron brought suit against the owner of a parking ramp after she was sexually assaulted and raped as she prepared to exit the ramp. The court recognized the law's general reluctance to impose a duty to protect on business enterprises, but held that the duty to protect should be extended to the owner of a commercial parking ramp. According to the *Erickson* court, the unique design and features of a parking ramp— multiple levels, low ceilings, supporting pillars, and rows of unoccupied cars, all of which provide numerous hiding places for potential assailants—require imposition of the duty to protect. *Id.* at 169. In addition, the court noted that anyone could enter the structure unobserved, that there was little foot traffic, and that unattended parked cars attracted thieves and vandals. These characteristics, the court held, "present a particular

focus or unique opportunity for criminals and their criminal activities." *Id.* This confluence of risks necessitates the imposition of a duty to protect on a parking ramp owner.

By contrast, Minnesota courts have declined to impose the duty to protect where the host party is not in a position to protect the entrusting party against third-party criminal activity. *See Pietila v. Congdon*, 362 N.W.2d 328, 332–33 (Minn.1985). In *Erickson*, the Court illustrated this principle when it cited the Michigan case of *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 418 N.W.2d 381 (1988).

In *Williams*, a customer was injured during an armed robbery of defendant's drugstore. The customer sued, claiming that defendant breached its duty to exercise reasonable care for the safety of its patrons. Specifically, insofar as is relevant, plaintiff alleged that defendant failed to provide armed, visible security guards to protect its patrons.[2] The *Williams* court declined to impose a duty to protect, holding that a merchant's duty of reasonable care does not include providing armed, visible guards to deter criminal acts of third parties. *Id.*, 418 N.W.2d at 384. According to the *Williams* court, such a requirement "... would require defendant to provide a safer environment on his premises than his invitees would encounter in the community at large." *Id.* The Michigan court declined to impose such a duty.[3]

The Minnesota Court of Appeals has recently held that the owner of a convenience store has no duty to provide for the safety and security of its patrons. *See Errico v. Southland Corp.*, 509 N.W.2d 585 (Minn.Ct. App.1993), *rev. denied* (1994). In *Errico*, a convenience store patron was assaulted as she began to drive away from the parking lot. The patron commenced suit, claiming that the owner of the convenience store had a duty to protect its patrons.[4] The defendant moved for summary judgment, arguing the absence of a special relationship which would impose a duty to control the assailants or to protect plaintiff from their acts. The district court granted summary judgment for the defendant. In affirming the district court, the Minnesota Court of Appeals examined the public policy considerations discussed in *Erickson* and found that "... (1) the prevention of crime is a governmental function that should not be shifted to the private sector; (2) imposition of a duty to protect against the unpredictable conduct of criminals does not lend itself easily to an ascertainable standard of care; and (3) the most effective crime deterrent may be cost-prohibitive for both the property owner and customer." *Errico* at 587–88, citing *Erickson*, 447 N.W.2d at 168–69. The Minnesota Court of Appeals then determined that it was unreasonable to expect a merchant to provide a safer environment on its premises than the government could provide in the surrounding neighborhood. *Id.* at 588.

In the present case, plaintiff seeks to label defendant's gas station/convenience store as a "crime magnet," and attempts to analogize it to *Erickson*. Plaintiff acknowledges that, under *Erickson*, a mere merchant-customer relationship does not give rise to a duty to protect. However, he suggests that the design and layout of gas station/convenience stores, like that of a parking ramp, impose a duty to protect. In particular, plaintiff argues that a gas station/convenience store invites a customer to leave an automobile ignition running while paying for gasoline or other items, thereby inviting auto theft. He further suggests that, since convenience stores are open late, the infrequent evening traffic allows robbers to go unobserved. The presence of cash machines and cash registers, according to plaintiff, encourages poten-

---

**2.** The plaintiff in *Williams* also claimed that the store's employees failed to intercede after realizing that an armed robbery was in progress. No such claim is made in this case.

**3.** During oral argument, counsel for plaintiff suggested that the Michigan case of *Diomedi v. Total Petroleum, Inc.*, 181 Mich.App. 789, 450 N.W.2d 91 (1989) overruled *Williams*. The Court rejects that suggestion as the *Diomedi* case involved the

issue of a failure to notify police of an assault in progress, rather than the duty to protect.

**4.** The plaintiff in *Errico* also suggested that the employees of the convenience store failed to assist her or to summon help in order to stop the attack. There is no such allegation in the case at bar.

tial robbers to wait in the shadows outside of convenience stores for the opportune time to rob customers, or the store itself. In sum, plaintiff argues that, like a parking ramp, a gas station/convenience store possesses characteristics which invite criminal activity and impose a duty on owners to protect their customers. This Court does not agree.

The Court finds that the mercantile *Errico* and *Williams* cases, rather than the *Erickson* parking ramp case, are the proper analogy to the present case. In a gas station/convenience store, like the drugstore in *Williams*, patrons enter into a brightly-lit, individual store. The store, its cashier-attendant, and its merchandise are easily visible from the street. Although there is some dispute as to the incidence of crime in the neighborhood in which defendant's premises are located, accepting plaintiff's assertions as true, defendant does not automatically owe a duty merely because its gas station/convenience store is located in a high-crime area. *See Errico*, 509 N.W.2d at 588. Furthermore, while possessors of land have a duty to maintain their premises in a safe condition, that duty extends to the physical condition of the premises, not to criminal acts of independent third persons. *See Pietila v. Congdon*, 362 N.W.2d 328, 332–33 (Minn.1985).

There is clearly a limit to the duty to protect. *See Spitzak*, 500 N.W.2d 154, 156–57 (Minn.Ct.App.1993). The risk to the entrusting party must be greater than " 'that presented out on the street and in the neighborhood generally' before a duty will be imposed." *Id.* at 157, citing *Erickson*, 447 N.W.2d at 169. Here, plaintiff was at no greater risk in the gas station/convenience store than he would be elsewhere in the neighborhood. The evidence in this case simply does not establish a basis for a special relationship giving rise to a duty to protect.[5]

It appears to this Court that the duty sought to be imposed by plaintiff is essentially to provide police protection, a duty traditionally vested in the government. The Court cannot gainsay the truth that we live in difficult times. If they ever were, the Twin Cities are no longer islands of respite from violent crime. These facts, however, do not undo the law of tort or reimpose the late-medieval need for private armies. Our municipalities are guarded by community police departments. Under the circumstances presented in this case, the law does not impose on a business owner/merchant the duty of employing protection beyond that provided by the community itself.

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED THAT:

Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

5. In the absence of a special relationship, and here the Court has found none, the Court need not consider the question of foreseeability as "[t]he issue of foreseeability need not be reached when there is no special relationship." *Spitzak*, 500 N.W.2d at 157–58.