Erin ANDERS, Appellant,

v.

Ronald J. TRESTER, Respondent.

D & D, INC., Respondent,

v.

Janell JONES, Defendant and Third–Party Plaintiff,

v.

David ANDERS, Third–Party Defendant.

No. C5–96–2454.

Court of Appeals of Minnesota.

April 22, 1997.

Stephen D. Gabrielson, St. Cloud, for Appellant.

Timothy W. Nelson, St. Cloud, for Respondent Trester.

Dyan J. Ebert, John A. Nelson, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for Respondent D & D, Inc.

Considered and decided by PARKER, P.J., TOUSSAINT, C.J., and HUSPENI, J.

## OPINION

PARKER, Judge.

Appellant Erin Anders challenges the district court's grant of summary judgment in favor of respondent D & D, Inc. Concluding that no special relationship was shown to exist between the two parties, the trial judge ruled that Anders had not established that D & D, Inc., had a duty to protect him from the criminal actions of a third party. Because no special relationship was shown to exist, no issue of foreseeability was reached. We affirm.

## FACTS

This case arose as a result of an altercation between Erin Anders and co-respondent Ronald Trester at a Taco John's restaurant. The Taco John's is located in downtown St. Cloud and is owned by co-respondent Doris Garman, d/b/a D & D, Inc. The restaurant is also located in proximity to at least 13 bars. It is open late into the night and, after bar-closing time, many of the bar patrons come into the restaurant. This stream of business has become known as the "bar rush" period and is greatest on Friday and Saturday nights.

On Saturday, February 27, 1993, around 7:30 p.m., Erin Anders, his brother David, and friend Sean Forester went out for a few drinks. By midnight, they had gone to two bars and had each consumed approximately three to four glasses of beer. After leaving the second bar, the three decided to go to Taco John's to eat.

Upon arriving at the restaurant, the three got their food and sat down. A short time later, Janell Jones, her sister Julia, and her boyfriend, Ronald Trester, came into the restaurant. They had also visited a bar near the Taco John's. Julia Jones and Trester got in line at the counter to order. When Janell joined them, she was annoyed to hear a stranger call her "blondie." While standing in the line, a piece of potato called an "ole" struck Janell on the buttocks. She was offended by this and, after a patron pointed to David Anders, she went to the booth where he, Erin, and Sean were seated and demanded an apology. David Anders refused to apologize and denied throwing the "ole."

Trester then approached the table and demanded that David Anders apologize. He again refused, and a fight between Trester and David Anders ensued. Trester threw him to the floor and continued to kick and hit him. David Anders rolled underneath the table to protect himself from the blows. His brother Erin attempted to intervene, and Janell Jones hit him in the back of the head. Erin Anders then slammed Janell down on a

table. Seeing this, Trester then punched him. Erin Anders fell to the floor, and Trester then stomped and kicked him. Trester then asked the restaurant staff to call an ambulance.

Erin Anders sustained many injuries during the brawl and commenced a personal injury action against Trester, Janell Jones, and D & D, Inc. The restaurant's motion for summary judgment was granted.

On appeal, Erin Anders alleges that the restaurant owed a duty to its customers to protect them from third-party assaults occurring during the "bar rush."

## ISSUE

Did the trial court err in ruling that no special relationship existed that could give rise to a duty on behalf of D & D, Inc., to protect Erin Anders from assault by a third party?

## DISCUSSION

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, we ask "whether there are any genuine issues of material fact" and "whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). Summary judgment is inappropriate if reasonable people could draw different conclusions from the evidence. *Illinois Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630, 633 (Minn.1978). "[T]he reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

## I.

Anders argues that the trial court erred in granting D & D's motion for summary judgment. He contends that the restaurant's staff had a duty to protect him from the assault by Trester. Anders argues that the

character of the clientele during "bar rush" and the number of Taco John's calls to the police regarding criminal incidents during this time period establishes the existence of a special relationship between customers and the restaurant. Anders argues that, had the district court properly resolved all evidentiary inferences in his favor as the opponent of the motion, summary judgment could not have been ordered against him.

■■■ Generally, there is no duty to control the conduct of a third person in order to prevent that person from causing injury to another. *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn.1979). Whether a duty exists depends upon the existence of a special relationship between the defendant and a third person that imposes a duty to control or a special relationship between the defendant and another party that gives the other the right to protection. *Errico v. Southland Corp.*, 509 N.W.2d 585, 587 (Minn.App.1993), *review denied* (Minn. Jan. 27, 1994); *Lundgren v. Fultz*, 354 N.W.2d 25, 27 (Minn.1984). The existence of a legal duty is an issue of law for the court to determine. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985).

■■■ To maintain a negligence claim, the plaintiff must show (1) a duty, (2) breach of that duty, (3) a causal connection between the breach of duty and the injury, and (4) injury or damages. *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn.1990). Whether a duty exists depends on two factors: (1) the existence of a special relationship between the defendant and the third person that imposes a duty to control, or between the defendant and the other that gives the other the right to protection; and (2) the foreseeability of the harm. *Errico*, 509 N.W.2d at 587. A special relationship may be found where an individual has entrusted his or her safety to another and the other has accepted that entrustment. *Erickson v. Curtis Inv.Co.*, 447 N.W.2d 165, 169–70 (Minn.1989) (holding that parking ramp owner owed a duty to protect rape victim because the general characteristics of a parking ramp facility presented a unique opportunity for criminal activities). A special relationship also assumes that the harm represented by the third person, or criminal, is

something that the other is in a position to protect against and should be expected to protect against. *Id.* When determining whether such a duty exists, principled policy considerations include:

> (1) the prevention of crime is a governmental function that should not be shifted to the private sector; (2) imposition of a duty to protect against the unpredictable conduct of criminals does not lend itself easily to an ascertainable standard of care; and (3) the most effective crime deterrent may be cost prohibitive for both the property owner and customer.

*Errico,* 509 N.W.2d at 587–88 (citing *Erickson,* 447 N.W.2d at 168–69). The issue of foreseeability need not be reached when there is no special relationship. *Errico,* 509 N.W.2d at 587.

The district court found that the Taco John's was under no duty to protect Anders from Trester's assault. Comparing the circumstances of this case to those of *Erickson,* the district court found that the Taco John's was an open building that did not provide places for criminals to hide or lurk and, generally, was not a place that attracted thieves and vandals. Because the Taco John's could not be said to present a "unique opportunity" for crime, the court concluded, no duty to protect existed. The court further concluded that because there was no special relationship, the issue of foreseeability need not be reached.

Minnesota courts have recognized only a limited number of circumstances in which a special relationship imposes a duty to protect. These include innkeeper-guest, common carrier-passenger, and hospital-patient. *See Erickson,* 447 N.W.2d at 168. In *Erickson,* our supreme court applied this principle to the relationship between a parking ramp operator and its customers. *Id.* at 169. Considering the fact that the parking ramp in that case was a large, dimly lit downtown facility with "places in which to hide or to lurk," the court explained:

> These general characteristics of a parking ramp facility, it seems to us, present a particular focus or unique opportunity for criminals and their criminal activities, an opportunity which to some degree is differ-

ent from that presented out on the street and in the neighborhood generally.

*Id.*

We observe, however, that our courts have been "cautious and reluctant to impose a duty to protect" on business enterprises, and a mere merchant-customer relationship does not impose upon a merchant a duty to protect its customers. *Id.* at 168. In *Errico,* we held that a convenience store owner did not owe a legal duty to protect a customer from an assault in the store' s parking lot because no special relationship existed. *Errico,* 509 N.W.2d at 588–89. In distinguishing *Errico* from *Erickson* we concluded:

> The mere fact that the store in question here is located in a high crime neighborhood does not impose * * * a duty to protect its customers from the acts of unidentified third persons. * * * Unlike the parking ramp in *Erickson* * * *, the parking lot here is located * * * adjacent to a busy public street. The lot is open and well lit, and cars are not left unattended for long periods of time. The parking lot did not necessarily provide a place in which criminals could "lurk or hide", as in *Erickson.*

*Id.* at 588.

In the instant case, the downtown Taco John's remains open late to attract business from "bar rush" customers. However, by his own testimony, Anders stated that he had visited the Taco John's many times and did not feel threatened or deterred from patronizing the restaurant until after this incident. We acknowledge there is some merit to Anders' argument that a duty to protect should be found when a restaurant has a violent atmosphere as a result of its solicitation of business from intoxicated persons. The evidence here, however, does not establish that Taco John's was known as a place of violence; the police station is only about a block away. The police log showing that police were often called from a phone on the premises does not show that all the incidents occurred on the premises or were violent in nature. The deposition testimony of Joyce Cheeseman, Taco John's long-time night manager, was that the Anders incident was the most violent

occurrence in her experience at the restaurant. Furthermore, unlike the facts of *Errico*, once Trester informed the restaurant staff of the injury, the police were called immediately.

We concur with the district court's conclusion that the evidence does not establish that D & D had a "special relationship" with Anders. The special relationships currently recognized by existing caselaw are clear and narrow. Carving out additional exceptions to the general rule is beyond the purview of this court. Even drawing all inferences, as we must, in favor of Anders, we hold that the district court's grant of summary judgment was not error.

## DECISION

We affirm the district court's order for summary judgment in favor of respondent.

**Affirmed.**