# NELLIE HENDERSON v. BJORK MONUMENT COMPANY, INC.[1]

June 28, 1946.

No. 34,206.

[1]Reported in 24 N. W. (2d) 42.

242

*G. Halvorson,* for appellant.
*John T. Rohwedder* and *Ralph S. Parker,* for respondent.

JULIUS J. OLSON, JUSTICE.

Action to recover damages for personal injuries, wherein plaintiff recovered a verdict for $350. Defendant's motion for a new trial being denied, this appeal follows.

Defendant, as its name indicates, is engaged in the business of manufacturing markers and monuments for graves. Its business is located in a two-story building on Hennepin avenue in Minneapolis and faces the west. The ground floor is used as a sales- and showroom, its floor area being about 40 x 110 feet. Some 70 feet from the front of the showroom and on the north side thereof is a door leading into a hallway three feet wide running to the north wall, where there is a window 44 x 62 inches. At the end of the hallway and running to the left along the north wall is a concrete stairway of seven steps leading to a landing. The steps are 11½ inches deep with 7½-inch risers. By means of a door with a window in it 22 x 36½ inches, one may arrive upon the landing mentioned directly from the outside of the building. Another stairway

leads from the landing to the basement and runs in the opposite direction from that of the first stairway, so that in going from the ground floor to the basement one descends the first flight in a westerly direction, makes a 180-degree turn on the landing, and descends the remaining flight in an easterly direction. There is an electric light in the ceiling over the landing at the foot of the first flight, and both stairways are enclosed on both sides to the ceiling. There were no handrails.

Plaintiff, having ordered a marker for her husband's grave, called at the premises in question at about 8:45 a. m. on November 17, 1943, to inspect the marker. She went there pursuant to a telephone invitation by defendant. Upon arrival there, she engaged in a short conversation with one Mrs. Nellie Bjork, then in charge. The two women promptly started for the basement through the hall door. Mrs. Bjork preceded plaintiff, who, after descending three or four steps of the first flight of steps, slipped and fell forward on her hands and knees and landed "practically laying [*sic*] down on the landing." In her fall she received certain injuries, for which damages were sought in this action. Plaintiff claimed that the stairway was not lighted and that Mrs. Bjork turned on the light over the landing *after* plaintiff had fallen.

The court instructed the jury as follows:

"Now, the law is that the owner of premises is bound to exercise ordinary, reasonable care to keep them in a safe condition for those who come upon them by either express or implied invitation. However, the owner of the premises is not an insurer of their safe condition. The plaintiff in this case was on the stairway as an invitee of the defendant, that is, she had been invited there to come to the premises and to go down the stairs for the purpose of inspecting a marker.

"The jury will first consider whether or not the defendant did or did not use ordinary, reasonable care in making the stairway to the basement safe for plaintiff. It is not claimed that there was any defect in the stairs themselves, that there were holes in the stairs, that they were slippery, or out of the ordinary, or any-

thing of the kind. It is claimed that the defendant was negligent in failing to use ordinary care, first, in failing to keep the stairs properly lighted so plaintiff could see where she was going and stepping as she went down; also that the defendant was negligent in failing to comply with the city ordinance requiring a handrail on the sides of the stairway. It is admitted there were no hand-railings.

"Now, as to the first claim as to lighting. The plaintiff claims there was not sufficient light to see the stairs and for that reason she tripped and fell; that there was an electric light at the top of the stairs in the ceiling, and one at the landing, but that they were not turned on, and that at that time in the morning at that time in the year the light coming in from the outside was not sufficient to light the stairway."

This charge was in no way questioned by counsel for either party, although at its conclusion the court asked counsel, "Is there anything else on either side?"

Immediately before the giving of the charge, counsel for defendant orally requested:

"The defendant would ask the court to submit to the jury a special interrogatory as to whether or not this stairway was three feet six inches or more in width, and to answer yes or no."

The court denied the request, but submitted to the jury as a fact issue the substance of what defendant asked for; in other words, that before plaintiff could recover upon either theory she must first establish by a preponderance of the evidence the basis upon which liability was predicated.

■ Since plaintiff was invited to defendant's premises and was directed and guided by one of its servants having in hand the performance of its duty to plaintiff, the rule stated by the trial court comes directly into play. It is well stated in 4 Dunnell, Dig. & Supp. § 6984, in this form:

"The owner or occupant of premises is bound to exercise ordinary or reasonable care to keep them in a safe condition for those who

come upon them by his express or implied invitation. He is not an insurer of their safe condition."

The court's instruction strictly followed the rule we have quoted. Cf. *Id.* § 6987, and cases cited.

In applying the stated rule to the facts recited, we should also bear in mind that this stairway was a place wholly unknown to plaintiff. Admittedly, there was no light except such as came from the mentioned windows. The accident happened during the morning hours at a time of year when the sun is far to the south. The stairway being toward the north side of the two-story building, naturally there would not be much light from that source. And, as we have noted, Mrs. Bjork, who was in charge of plaintiff, turned on the lights immediately after plaintiff fell. The reason she did so seems obvious; at least the jury could so conclude. They have settled that issue by their verdict.

■ Violation of the ordinance has for its foundation this generally accepted rule (Baxter v. Coughlin, 70 Minn. 1, 4, 72 N. W. 797, 798):

"* * * that where the statute, for the protection and benefit of individuals, prohibits a person from doing an act, or imposes upon him a duty, if he disobeys the prohibition or neglects to perform the duty, he is liable to those for whose protection the statute was enacted for any damages resulting proximately from such disobedience or neglect."

This rule has been applied in numerous cases since, and without deviation. The cases are listed in 4 Dunnell, Dig. & Supp. § 6976. Of course, the same rule applies to ordinances, since such "are in the nature of local statutes." Larson v. Lowden, 204 Minn. 80, 85, 282 N. W. 669, 672.

■ Upon the facts disclosed by this record, we think that the question whether there was a violation of the ordinance presented a jury issue. Defendant's request for a special finding concedes as much.

■ Defendant tendered evidence of absence of other accidents on this stairway. The offered proof was rejected on plaintiff's objection thereto, and defendant now claims error. The trial court was of the view that there were only two claims of negligence involved, *i. e.,* lack of adequate light on the stairway and failure to provide handrails. We think the court correctly disposed of the matter, since plaintiff had made no showing or claim that her accident had been caused by any inanimate defect which had caused injury to others from the same source. In such circumstances, the court could well conclude that defendant's offer of proof amounted to nothing more than the introduction of a collateral issue which might becloud the actual issues involved. Evidence of other accidents from the same cause, such as accidents caused by the same machinery (cf. Asplind v. Fred W. Pearce Corp. 175 Minn. 445, 221 N. W. 679), is admissible. Likewise, in Ellis v. Lindmark, 177 Minn. 390, 225 N. W. 395, where negligence was predicated upon proof of selling linseed oil for cod-liver oil in poultry feed and that others had used oil from the same barrel and their poultry had been afflicted the same way as was plaintiff's flock, such evidence was held admissible. There are many other cases dealing with this phase of the law. Our cases are cited in 4 Dunnell, Dig. & Supp. § 7053. There the substance of our holdings is stated in this language:

"Evidence of similar accidents from the same inanimate cause is admissible to prove that the common cause was dangerous or likely to cause such accidents; that the person responsible for it was aware of its dangerous character or tendency to cause such accidents; and that it caused the accident in question. It must appear that the conditions at the time of the other accidents were substantially the same as at the time of the accident in question. Conversely, evidence that other similar accidents have never resulted from the alleged cause is admissible."

In this case there was no inanimate cause involved. The negligence issues presented no other claim upon which to base liability than the two mentioned.

■ Obviously, what defendant sought to accomplish was the introduction of collateral facts which it deemed admissible, because, in the opinion of its counsel, such evidence has a direct, logical tendency to prove or disprove the facts in issue. The cases are found in 2 Dunnell, Dig. & Supp. § 3252, and see, especially, those under note 56. The question presented in such matters is not ordinarily a question of law, but rather—

"a question of sound, practical judgment, to be determined by the trial court with reference to the facts of the particular case. It is a question of where lies the balance of practical advantage, and should be left to the discretion of the trial court except where the case is controlled by a settled rule of law."

Applying this principle to the facts disclosed, it cannot and should not be said that the trial court failed to exercise sound judicial discretion in limiting the testimony to the particular claims of negligence upon which plaintiff's cause was founded.

■ Lastly to be considered and disposed of is whether defendant was entitled to a new trial because of newly discovered evidence. This claimed new evidence is said to have been discovered after the trial and not before. It is said that a new means of measuring the amount of light at a given point may be established by what is known as a light meter. Defendant's counsel learned of this shortly after the trial during a conversation with one of his friends.

It is well settled that newly discovered evidence is not ground for a new trial if it could have been discovered before the trial by the exercise of reasonable diligence. Our cases have held in numerous instances that the question is one addressed to the sound discretion of the trial judge. Having heard the case and observed the witnesses, his means of judging the propriety of granting a new trial and deciding whether the new evidence would be likely to change the result are superior to those afforded the appellate court through a mere statement of the evidence in the record. Inquiry here is not whether upon the record a new trial might have been granted, but whether the refusal of it involved a violation of a clear legal

right or a manifest abuse of judicial discretion. 5 Dunnell, Dig. & Supp. § 7125.

We had occasion to go into this matter in the case of In re Estate of Hore, 220 Minn. 374, 383, 19 N. W. (2d) 783, 787, 161 A. L. R. 1366, and we concluded that the same diligence "which led to the discovery of the new evidence after trial would have discovered it had such diligence been exercised prior thereto." That reason is equally applicable in the present case.

The trial court in its memorandum attached to the order here for review had this to say:

"There is no good reason shown why the testimony could not have been procured before trial. The witness resided here and apparently was in possession of all the knowledge which the defendant claims he now possesses upon the subject. He could easily have been found and produced before trial.

"The other reason is that measuring the light in the stairway now would not be very helpful unless it could be shown that light conditions were exactly the same—the same amount of light from outside through the windows, and that the window panes were in the same condition as to cleanliness. This would be very difficult to establish because of the variation of light conditions from day to day."

Having found no error prejudicial to defendant, the order is affirmed.

Affirmed.