CLARA NUBBE v. HARDY CONTINENTAL HOTEL SYSTEM OF MINNESOTA, INC.[1]

February 27, 1948.

No. 34,527.

[1]Reported in 31 N. W. (2d) 332.

*S. G. Fitzpatrick, Faegre & Benson, Paul J. McGough,* and *Wright W. Brooks,* for appellant.

*Ryan, Ryan & Ryan,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant's motion for judgment *non obstante* or a new trial in a personal injury action wherein plaintiff recovered a verdict.

On December 22, 1945, plaintiff, who then had been a tenant for over 16 months on the second floor of defendant's apartment house in Brainerd, went to the second-floor landing of the building's main entrance stairway to see if the postman had arrived with a letter. As she stepped to the edge of the top step, with her right hand on the stair railing, she saw the postman putting letters in the apartment mailboxes below. He announced that he had a letter for her. Lena Shaw, another tenant who was about to ascend from the first to the second floor, called to plaintiff that she would bring the letter to her. At the same moment plaintiff started down the stairs, and as she was in the act of stepping from the top step or landing to the next step below her feet shot out from under her in such a manner that she fell and landed in a sitting position and did not stop her descent until she reached the sixth step from the top. In falling, she sustained a fracture of the coccyx at the end of her spine.

Taking, as we must, the view of the evidence most favorable to the verdict, it appears that plaintiff at the moment she fell was standing on the top step, which, as to its outer or first six inches, consists of a six-inch board extending across the four-foot-wide stairway. This six-inch board forms a continuation of the second-floor landing, but is not exactly flush therewith, in that (without taking into consideration the additional slant or depression from wear) over its entire length it slants down and forward so that the front edge is one-half inch lower than the back edge. With respect to the center portion of the steps customarily used by people in passing up and down the stairway, the one-half-inch slant of the board itself has

been further increased and worn smooth through wear from constant usage, and this wear naturally has been greatest toward the front edge, which was worn smooth and round. At the extreme front edge in the center portion, the combined slant from the tilting of the board itself and from wear amounted to a total of one inch. In other words, there was an over-all forward slant of one inch in six for the width of the board, but, as noted, most of the slant was confined to the outer or front inch in the middle portion of the stairway. At the moment before she fell, plaintiff stood with the toes of her leather bedroom slippers even with, but not projecting beyond, the front edge of the top step. Her right hand was on the stairway railing. Under the state of the evidence, the jury could reasonably find that her feet were in the worn or central part of the top step.

■ We do not agree with defendant's contention that the verdict is not sustained by the evidence. It is conceded that defendant as landlord retained control of the stairway for the common use of all tenants in the building. A landlord who retains possession and control of stairways and similar building facilities for the common use of the tenants therein, although not an insurer of the safety of these facilities, owes a duty of exercising ordinary care to see that such stairways and facilities are originally constructed *and subsequently maintained* in a reasonably safe condition for the use of tenants who are themselves exercising ordinary care. The duty of maintaining these facilities in a reasonably safe condition continues throughout the entire period of common use by the tenants, and, in reasonable anticipation of the progressive deterioration of wood and similar substances through the passage of time and from the wear and tear of continual use, this duty necessarily implies and requires reasonable inspection from time to time. Generally speaking, any defective condition in the premises caused by wear from prolonged and continual use is brought into existence gradually and not suddenly, and although the landlord may not have had actual notice, it becomes a question of fact whether in the exercise of ordinary care he could have discovered the hazardous condition

and the unreasonable risk involved therein in time to make repairs for the reasonable safety of others. Anderson v. Winkle, 213 Minn. 77, 5 N. W. (2d) 355; Williams v. Dickson, 122 Minn. 49, 141 N. W. 849; Prosser, Torts, 656; Restatement, Torts, § 360c. In the instant case, defendant must naturally have anticipated that the stairway would be used by a large number of tenants, and that as a result of such continual use the steps would in time become worn and defective. As a duty to plaintiff, defendant was bound to inspect the steps at reasonable intervals to ascertain their condition and not to wait until someone was injured as the result of a defect which a seasonable inspection would have revealed. Taking into consideration the slanting and smooth condition of the top step as accentuated by prolonged wear, together with the roundness of the forward edge, and the additional fact that this condition was obvious and not latent or hidden and that it must have existed for a sufficient period of time to have been disclosed by reasonable inspection, we cannot say that the evidence fails to sustain a finding that defendant was negligent in the performance of its duty, and that such negligence was the proximate cause of plaintiff's fall and resulting injuries.

■ Defendant asserts that plaintiff was guilty of contributory negligence as a matter of law. There is nothing to show that she wore improper footwear. At and before the moment she fell, she had her right hand on the side railing. Although she was familiar with the defective condition of the stairway through long use, we cannot say as a matter of law that the defect in the top step was so obviously dangerous that a reasonably prudent person of plaintiff's age and in her condition of health would, while grasping the handrail, regard it as foolhardy to attempt to descend. Restatement, Torts, § 360a. She was not guilty of contributory negligence as a matter of law because she happened to be in poor health at the age of 66 years. Whether under all the circumstances she conducted herself with the ordinary care of a reasonably prudent person was an issue of fact for the jury.

Defendant assigns as error the action of the trial court in sustaining an objection to the following testimony by witness James Hervey:

"Q. During any of that time did you have any reports of any other accidents happening on that landing?

"A. No.

"Mr. Ryan: That is objected to as irrelevant to this case, and the Court has ruled on it.

"The Court: Objection sustained."

The court erred in sustaining the objection. Evidence of the absence of prior accidents resulting from the same physical defect or inanimate cause, under substantially similar circumstances, is admissible to prove that such defect or cause was not dangerous or likely to cause such accidents, and further to prove that the person responsible for the defective condition was not reasonably chargeable with knowledge of its dangerous character. Doyle v. St. P. M. & M. Ry. Co. 42 Minn. 79, 82, 43 N. W. 787, 788; Bergman v. Williams, 173 Minn. 250, 217 N. W. 127; Henderson v. Bjork Monument Co. Inc. 222 Minn. 241, 24 N. W. (2d) 42; 5 Ann. Cas. 1014; 4 Dunnell, Dig. & Supp. § 7052. The error, however, was without prejudice, in that the answer to the question was permitted to stand although the objection had been sustained. No action, on motion of plaintiff or otherwise, was taken by the court to strike the answer from the record or to withdraw it from the jury's consideration. Defendant, therefore, had the benefit of the answer, and no harm was done. A party is not prejudiced by the erroneous sustaining of an objection to a question if the witness answers the question and such answer is not stricken from the record or otherwise withdrawn from the jury's consideration. Helstowski v. Greenberg, 2 N. J. Misc. 1094, 1099, 126 A. 615, 617; Jones v. Austin (Mo. App.) 154 S. W. (2d) 378, 380; Grimley v. United Elec. Rys. Co. 62 R. I. 192, 199, 4 A. (2d) 373, 376; Casualty Reciprocal Exch. v. Sutfin, 196 Okl. 567, 572, 166 P. (2d) 434, 439.

Upon cross-examination, plaintiff's witness Lena Shaw was asked if she had "ever heard of anybody else falling on that stairway." An objection thereto was sustained. This broad question was not restricted in its application to prior accidents arising from the same inanimate cause, but applied to any accidents occurring on the stairway regardless of their cause, and was therefore inclusive of collateral facts, which ordinarily are admissible only in the court's discretion according to the facts of the particular case. Henderson v. Bjork Monument Co. Inc. 222 Minn. 241, 24 N. W. (2d) 42; Sullivan v. Minneapolis St. Ry. Co. 161 Minn. 45, 200 N. W. 922; 2 Dunnell, Dig. & Supp. § 3252, and cases cited under note 56. Even if we ignore the broadness of the question and also overlook its hearsay nature, and further assume that the trial court erred in sustaining the objection, we find nothing prejudicial to defendant, in that the negative answer which would have been given, as revealed by the offer of proof at the end of the trial, would only have been cumulative of the testimony given by Hervey. The familiarity of both witnesses with the premises pertained substantially to the same period of time. See, 5 Dunnell, Dig. & Supp. § 7184. For the reasons hereinbefore given, no prejudice resulted from the refusal of defendant's offer of proof.

■ The jury was instructed that defendant owed the duty "to use that care which an ordinarily reasonable and prudent person would use in the same or similar circumstances to keep and maintain the stairs * * * in a reasonably safe condition." Defendant's request that the jury be also charged that defendant was "not an insurer of the safety" of the premises was denied. Although defendant's request was entirely proper and, if granted, would by contrast have reasonably contributed to the clarity of the charge, we cannot say that the trial court's refusal so to instruct was erroneous or prejudicial. Implicit in the court's instruction that defendant owed a duty *to use the care of an ordinarily reasonable and prudent person to maintain the premises in a reasonably safe condition* is a meaning that negatives any thought that the landlord is an insurer of the safety of the premises. The jury could not possibly infer from

the charge that defendant owed any greater duty than that of reasonable care. A charge that presents to the jury the applicable law in clear, precise, and intelligible form so as to leave no reasonable likelihood for the drawing of erroneous inferences therefrom is sufficient, and it need not be buttressed by the express exclusion of nonapplicable principles of law. Parson v. Lyman, 71 Minn. 34, 37, 73 N. W. 634, 635; 6 Dunnell, Dig. § 9781, with cases under notes 25 and 27.

The jury's verdict was for $4,000. Plaintiff sustained a fracture of the coccyx, together with a forward displacement of a portion thereof, causing her at times to suffer excruciating pain upon sitting down. At the time of the trial, nearly a year after the injury occurred, she still suffered sharp pains and aches in the lower spine. She was confined to the hospital for 42 days, and for 60 days thereafter she required the assistance of a personal attendant in her apartment. Her expenses amounted to $457.65. The jury was justified in taking into consideration the present low value of money and the high cost of living. Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; Kerzie v. Rodine, 216 Minn. 44, 11 N. W. (2d) 771; Bergstrom v. Frank, 213 Minn. 9, 4 N. W. (2d) 620. Taking all these factors into consideration, we cannot say that the verdict was excessive.

Affirmed.