Shawn **LUBBERS,** et al., **Respondents,**

v.

Greg **ANDERSON,** defendant and third-party plaintiff, **Respondent,**

Richard **NEUTILLA,** third-party defendant, petitioner, **Appellant.**

Nos. C4–94–1243 and CX–94–1618.

Supreme Court of Minnesota.

Nov. 17, 1995.

Steven L. Viltoft, Patrick J. Kelly, Hopkins, for Richard Neutilla.

Harlan Goulet, Gary Stoneking, Minneapolis, for Shawn Lubbers, et al. Barret Lane, James Haigh, Minneapolis, for Greg Anderson.

## OPINION

PAGE, Justice.

This case arises as a result of injuries sustained by Shawn Lubbers when his snowmobile encountered open water, began to sink, and Lubbers was struck from behind by

a snowmobile driven by Greg Anderson, while riding on the partially frozen St. Louis River. Lubbers and his wife, Lora, commenced this action in Hennepin County District Court against Anderson. Anderson filed a third-party action against Richard Neutilla seeking indemnity and/or contribution from Neutilla based on Neutilla's alleged failure to maintain a safe course while riding single file in the group of snowmobilers which included Lubbers and Anderson. The Lubbers settled their claim against Anderson pursuant to the terms of a "Loan Receipt and Contract for Release" agreement and amended their complaint to assert a direct claim against Neutilla. Neutilla and Anderson filed cross motions for summary judgment. Neutilla's motion sought dismissal of the claims against him and Anderson's motion sought a determination that Neutilla owed the snowmobilers following him a duty of care as a matter of law.

The district court, in granting Neutilla's summary judgment motion, found, as a matter of law, that Neutilla did not owe a duty of care to those following him. The district court denied Anderson's motion in its entirety. The court of appeals reversed, holding that: (1) Neutilla had a statutory duty to operate his snowmobile in a safe manner so as not to endanger the other snowmobilers; and (2) Neutilla owed a common law duty to exercise reasonable care in riding his snowmobile. We reverse.

On January 18, 1992, a group of snowmobilers, including Neutilla, Lubbers, and Anderson, embarked on a snowmobile trip from Stacy, Minnesota, to Cherry, Minnesota. Around 6:00 p.m. that evening, the group made a stop in Floodwood, Minnesota, to have food and beer at the Savannah Portage, a local tavern. During this stop, the group decided that they would continue their trip by way of the St. Louis River. One member of the group, Anthony Clement, had snowmobiled on the St. Louis River the day before and noted the existence of at least three separate areas of open water on the river. The group's members agreed that Clement would lead them as they traveled on the river because of his knowledge of the open water. Having been told by Clement that the open water was in the center of the river, the group's members also agreed that they would ride along the river's left bank and follow Clement in single file. Each of the group's members, including Neutilla, Lubbers, and Anderson, understood the importance of riding in single file and staying away from the center of the river.

After leaving Floodwood, the riders arranged themselves randomly in single file and traveled up the river. The temperature at the time was approximately 20° below zero. Neutilla was riding the fourth snowmobile in the line, and Lubbers and Anderson were riding the eighth and ninth snowmobiles respectively.[1] As Clement led the group of snowmobilers, he was traveling at a distance of approximately 30 feet from the left bank of the river at a speed of 25 to 30 miles per hour. The river in this area was approximately 300 feet wide. At some point along the way, Neutilla, wanting to get out of the snow being "kicked up" by the snowmobile in front of him, drove his snowmobile to the right, toward the center of the river. The snowmobiles behind him followed in the same direction.

As Clement led the group past an area of open water, he saw steam rising from the hole in the ice created by the open water. At what he considered to be a safe distance on the other side of that hole in the ice, Clement stopped to make sure that all of the other snowmobiles made it by the open water. When he looked back, he saw lights in the middle of the river where they were not supposed to be. He also saw a cluster of lights that were disappearing and realized that the lights were disappearing because snowmobiles were going into the water.

**1.** In his brief to the court and at oral argument, Neutilla contends Lubbers and Anderson were riding the tenth and eleventh snowmobiles in the group. Our review of the record indicates otherwise. Although the precise order of the snowmobiles and the number of snowmobiles in the group are unclear from the record before us, if Lubbers' and Anderson's snowmobiles were the tenth and eleventh in line, our analysis of the issues presented in this case would not be any different.

The six snowmobiles immediately behind Clement, including Neutilla's,[2] made it safely past the open water. Snowmobile number seven, ridden by Rob Radotch, went into the water and began to sink. Lubbers' snowmobile, which was next in line, also entered the water and began to sink. Anderson's snowmobile, which was behind Lubbers, followed Lubbers into the water and struck Lubbers in the back. As a result of the accident, Lubbers sustained serious injuries, including a fracture dislocation of the right hip.

Neutilla raises three issues for our review: (1) whether he owed Lubbers a duty of care under the common law or under Minn.Stat. § 84.87, subd. 2 (1992); (2) whether Lubbers and Anderson, in riding on the river with knowledge that the river likely contained open water, assumed the risk of riding their snowmobiles on the river; and (3) whether Neutilla's failure to ride single file and stay to the left on the river proximately caused Lubbers' injuries. Because we conclude that the record before the court is devoid of any evidence which would support a determination that Neutilla's conduct proximately caused Lubbers' injuries, we resolve this case on that basis alone and reverse the court of appeals.

▮ Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. When reviewing a district court's grant of summary judgment, this court determines: (1) whether there are any genuine issues of material fact; and (2) whether the lower court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). In reviewing the record, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Id.* Any doubt as to whether issues of material fact exist is resolved in favor of the party against whom summary judgment was granted. *Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974). "Upon a motion for summary judgment * * * the adverse party cannot preserve his right to a trial on the merits merely by referring to unverified and conclusionary allegations in his pleading or by postulating evidence which might be developed at trial * * *." *Rosvall v. Provost,* 279 Minn. 119, 124, 155 N.W.2d 900, 904 (1968).

▮ A defendant is entitled to summary judgment as a matter of law when the record reflects a complete lack of proof on an essential element of the plaintiff's claim. *See Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845, 847–48 (Minn.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). The essential elements of a negligence claim are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury. *Schmanski v. Church of St. Casimir,* 243 Minn. 289, 292, 67 N.W.2d 644, 646 (1954). Thus, if there are no facts in the record before us giving rise to a genuine issue for trial as to any one of these essential elements, Neutilla is entitled to summary judgment as a matter of law. Here, viewing the record in the light most favorable to the Lubbers and Anderson, it is clear that they have failed to present specific facts giving rise to a genuine issue for trial as to the causal connection between Lubbers' injuries and Neutilla's allegedly negligent conduct.

▮ We have said that in order for a party's negligence to be the proximate cause of an injury "the act [must be] one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, * * * though he could not have anticipated the particular injury which did happen." *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 113 (Minn.1992) (quoting *Ponticas v. K.M.S. Investments,* 331 N.W.2d 907, 915 (Minn.1983)). There must also be a showing that the defendant's "conduct was a substantial factor in bringing about the injury." *Flom v. Flom,* 291 N.W.2d 914, 917

---

2. According to Neutilla, he did not see any open water or hear any cracking ice as he traveled up the river and was unaware that there was a problem with the snowmobiles behind him until he caught up with Clement.

(Minn.1980). Generally, proximate cause is a question of fact for the jury; however, where reasonable minds can arrive at only one conclusion, proximate cause is a question of law. *Wartnick v. Moss & Barnett,* 490 N.W.2d at 115.

The Lubbers and Anderson argue that but for Neutilla's riding his snowmobile to the right, away from the river's left bank and toward the center of the river, Lubbers would not have been injured. They also argue that there is a genuine issue of material fact as to whether Lubbers would have been injured but for Neutilla's conduct. Neutilla contends that there is no evidence in the record to establish that his actions were the proximate cause of Lubbers' injuries. Further, he contends that the actions of the snowmobiles between his snowmobile and Lubbers' snowmobile were a substantial factor in causing Lubbers' injuries.

The Lubbers' and Anderson's argument is less than persuasive. The fact that Neutilla turned to the right and rode his snowmobile toward the center of the river does not, without more, raise an inference that it was the cause of Lubbers riding into the open water and being hit in the back by Anderson's snowmobile. The Lubbers' and Anderson's arguments are premised on a "but for" analysis which this court has previously rejected. *Harpster v. Hetherington,* 512 N.W.2d 585, 586 (Minn.1994). The problem with the "but for" analysis as we said in *Harpster* is that "it converts events both near and far, which merely set the stage for an accident, into a convoluted series of 'causes' of the accident." *Id.* at 586. Neutilla made it by the open water without seeing it and without incident. There were three snowmobiles between Neutilla's and Lubbers'. The first two made it by the open water. The next one, ridden by Radotch, did not. Lubbers and Anderson followed Radotch into the water. Obviously something occurred behind Neutilla that caused the Radotch, Lubbers, and Anderson snowmobiles to go into the water. The record before us does not tell us anything about what that

something was. Moreover, we are not told what role, if any, Neutilla's conduct played in bringing about whatever it was that did occur. Without that information, it is impossible to establish any link between Neutilla's conduct and the injuries sustained by Lubbers. While it is possible to conclude that Neutilla's conduct "set the stage for the accident," it is impossible on this record to determine the cause of the accident. In order for us to conclude that Neutilla's actions proximately caused Lubbers' injuries, we would have to engage in speculation and conjecture. That, we will not do.

Absent any facts in the record giving rise to a genuine issue for trial on the essential element of proximate cause in this negligence action, Neutilla is entitled to summary judgment.[3]

Reversed.

---

3. Because we conclude that Neutilla is entitled to summary judgment as a matter of law, it is unnecessary for us to decide the issue of whether Neutilla owed a duty to Lubbers and Anderson or the issue of whether Lubbers and Anderson assumed the risk of riding their snowmobiles on the river knowing that it contained open water.