**Lori NICKELSON, Appellant,**

v.

**MALL OF AMERICA COMPANY, Respondent.**

No. C5–98–2376.

Court of Appeals of Minnesota.

June 8, 1999.

Wilbur W. Fluegel, Wentzel & Fluegel, Minneapolis, for appellant.

Burke J. Ellingson, Brendel and Zinn, Ltd., St. Paul, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, SCHUMACHER, Judge, and HUSPENI, * Judge.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

SCHUMACHER, Judge

Nickelson challenges the district court's summary judgment dismissing her negligence claim against respondent Mall of America Company. Nickelson argues that Mall of America assumed a duty to protect its tenants' employees by hiring a security force and by informing tenants that the security guards would intervene in ongoing physical altercations. Nickelson also argues that the tenant operational handbook and the mall safety and security handbook created a contractual duty to protect the tenants' employees. We affirm in part, reverse in part, and remand.

## FACTS

On December 1, 1996, appellant Lori Nickelson was working as a manager in the Foxmoor store at Mall of America's facility. At approximately 2:45 p.m., another store employee informed Nickelson that a female in the store put a suit into a bag without paying for it. After receiving that information, Nickelson called mall security and informed the security guards that a suspected shoplifter was in the store and that store employees would attempt to stop the suspect outside the store. Nickelson was under the impression that mall security personnel would be dispatched to the store to monitor the situation. According to Nickelson, she understood that it was the store's responsibility to detain suspected shoplifters and that Mall of America security's responsibility was to monitor the situation until Bloomington police arrived.

The suspected shoplifter and her companion began to leave the store before security personnel arrived. At that point, Nickelson approached the suspect and asked her to step back into the store. The suspect's response was aggressive and vulgar. Nickelson told the suspect that they would simply wait for security to arrive. After Nickelson made that statement, the suspect handed the bag to her companion and said, "Run." The companion took off running in the common area outside the store. The suspect then grabbed Nickelson's arm, turned her around, and sprayed mace in her face.

Nickelson and the suspect struggled to the floor in the common area, where two other females helped the suspect. While she was on the floor, Nickelson's head "was repeatedly getting hit on the floor and [she] was also being kicked." Nickelson and the other three individuals continued struggling until the manager of an adjacent store pulled the suspects off Nickelson. According to witnesses of the incident, there were security personnel in the area during the assault, but they stood idly by watching.

The Tenant Operational Handbook instructs tenants that: "If you see someone shoplifting, call 911 for Bloomington Police." The tenant handbook also states: "If necessary, call MOA Security, 883–8888, to stand by until Bloomington Police arrive." The safety and security manual instructs security personnel to protect a tenant's employee from physical harm.

Nickelson brought a negligence claim against Mall of America, arguing that the security officers breached their common law and handbook-created duty to intervene in the physical altercation. On summary judgment, the district court dismissed Nickelson's claim, finding that no duty to intervene existed.

## ISSUES

1. Through the parties' course of dealing, did Mall of America voluntarily undertake a duty to protect its tenants' employees?

2. Did the tenant handbook and the safety and security manual create in Mall of America a contractual duty to protect its tenants' employees?

## ANALYSIS

On appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in its application of the law. Minn. R. Civ. P. 56.03; *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

1. The basic elements of a negligence claim are (1) a duty; (2) a breach of that duty; (3) the breach was the proximate cause of plaintiff's injury; and (4) the plaintiff did in fact suffer injury. *Johnson v.*

*State*, 553 N.W.2d 40, 49 (Minn.1996). Whether a duty exists is a question of law and subject to de novo review. *Id.* In this case, the only issue on appeal is whether Mall of America security had a duty to intervene in the physical altercation on Nickelson's behalf.

▮ Generally, unless there is some kind of "special relation," a person has no common law duty to prevent a third person from injuring another. *Olson v. Ische,* 343 N.W.2d 284, 288 (Minn.1984). The landlord-tenant relationship, alone, creates no duty to protect. *Spitzak v. Hylands, Ltd.,* 500 N.W.2d 154, 156 (Minn.App.1993), *review denied* (Minn. July 15, 1993). It is well established, however, that "one who assumes to act * * * may thereby become subject to the duty of acting carefully, if he acts at all." *State by Humphrey v. Philip Morris, Inc.,* 551 N.W.2d 490, 493 (Minn.1996) (quotation omitted). Through its conduct, a party may assume a duty where one did not previously exist. *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 806 (Minn.1979).

▮ In this case, Mall of America does not have a duty to protect its tenants' employees merely due to its status as a landlord. *Spitzak,* 500 N.W.2d at 156. Specific aspects of Mall of America's conduct indicate that it assumed such a duty with regard to Nickelson. For example, Mall of America's action to hire a security force indicates that it assumed a limited duty to protect its tenants and their employees. Additionally, the safety and security manual instructed the security guards to break up physical altercations that they witnessed. As the Mall of America security chief stated, if an officer sees a physical altercation in progress, "We're going to cease it from going further." Although Nickelson was not aware of the safety and security manual and did not rely on its language, the manual shows that Mall of America security personnel understood they had a duty to intervene on Nickelson's behalf.

More important, however, is the fact that Mall of America security's intention to break up fights was communicated to Nickelson. According to Nickelson, Mall of America personnel informed her that security officers would intervene if "someone threw a punch or someone was hit to the point where some-one is going to be violated." Nickelson's deposition testimony demonstrates that some of her decisions regarding the suspected shoplifter were based on mall security's representations that they would intervene on her behalf. Because Mall of America voluntarily hired a security force, because those officers were directed to intervene in physical altercations and because Nickelson relied on the representation that such assistance would be forthcoming from security personnel, Mall of America voluntarily assumed a duty in this case to intervene in the altercation to protect Nickelson. *See Isler v. Burman,* 305 Minn. 288, 295, 232 N.W.2d 818, 821–22 (1975) (holding that court properly instructed jury on voluntary assumption of duty when evidence showed that party who inspected premises had assured others of premises' safety); *Williams v. Harris,* 518 N.W.2d 864, 868 (Minn.App.1994) (stating that liability for voluntarily assuming duty arises only if conduct causes others to rely on assumption of duty and to refrain from taking other actions to protect themselves), *review denied* (Minn. Sept. 29, 1994).

▮ 2. Nickelson also argues that the tenant handbook and the safety and security manual formed the basis for an implied contractual duty to protect the tenants' employees. Whether a person owes a legal duty to another person under a contract is a question of law, which we review de novo. *Germann v. F.L. Smithe Mach. Co.,* 395 N.W.2d 922, 924 (Minn.1986); *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn.1978).

▮ To form a contractual duty, a handbook must include an offer that is definite in form and the offer must be communicated to the offeree. *Campbell v. Leaseway Customized Transp., Inc.,* 484 N.W.2d 41, 44 (Minn.App.1992). Additionally, the offeree must accept the offer and consideration must be given. *Bratton v. Menard, Inc.,* 438 N.W.2d 116, 118 (Minn.App.1989), *review denied* (Minn. June 9, 1989).

▮ The tenant handbook merely states that a tenant should, "[i]f necessary, call MOA Security, 883–8888, to stand by until Bloomington Police arrive." This language cannot be construed as a clear, definite promise to protect a tenant's employee from

physical harm. *Campbell*, 484 N.W.2d at 44. Additionally, Nickelson has not specifically alleged facts that demonstrate that she or Foxmoor accepted the terms of the tenant handbook or that any consideration was given. For these reasons, the tenant handbook cannot form the basis for a contractual duty to protect.

The analysis of the safety and security manual is similarly problematic. There is no evidence that the terms of the safety and security manual were ever communicated to Nickelson or Foxmoor or that those terms were ever accepted. *Bratton*, 438 N.W.2d at 118. In addition, none of the available evidence indicates that Nickelson or other Foxmoor personnel ever saw the safety and security manual. Accordingly, no offer was ever communicated to Nickelson or Foxmoor. For these reasons, neither the tenant handbook nor the safety and security manual formed the basis for a contractual duty to protect.

## DECISION

The district court properly determined that neither Mall of America's tenant handbook nor its safety and security manual created a contractual duty to protect Mall of America's tenants' employees. The district court erred, however, in its conclusion that Mall of America did not voluntarily assume a duty to intervene in ongoing altercations to protect its tenants' employees.

**Affirmed in part, reversed in part, and remanded.**