Janice FUNCHESS, Trustee for
the Heirs of J.W. HAYNES,
decedent, Appellant,

v.

CECIL NEWMAN CORPORATION,
et al., Respondents.

No. C8–00–90.

Court of Appeals of Minnesota.

Aug. 8, 2000.

Review Granted Oct. 17, 2000.

repair the door to the apartment; (b) regardless of the duty imposed by the Minneapolis Housing ordinance, the landlord had an independent duty to make sure that the apartment was secure; and (c) the lease required the landlord to repair the door.

## FACTS

On May 12, 1995, J.W. Haynes was murdered in his apartment. Intruders gained access to the apartment building without using force and subsequently entered the apartment he shared with his girlfriend and their son. Haynes' mother, appellant Janice Funchess, commenced a wrongful-death action against respondent Cecil Newman Corporation (Newman), owner of Haynes' apartment building. Funchess alleged that the assailants were able to gain entrance to the building through a security door that had a broken lock. The district court granted summary judgment, finding that Newman owed no duty to Haynes. This appeal followed.

John O. Murrin, III, Christopher A. La-Nave, Murrin Law Firm, Edina, for appellant.

William F. Mohrman, Mohrman & Kaardal, P.A., Minneapolis, for respondents.

Considered and decided by
AMUNDSON, Presiding Judge,
CRIPPEN, Judge, and ANDERSON,
Judge.

## OPINION

AMUNDSON, Judge.

After third parties entered an apartment and killed a tenant, the tenant's wrongful death trustee sued the landlord, alleging the landlord's negligence contributed to the tenant's death. The landlord moved for summary judgment, and the district court granted the motion. Tenant's trustee appeals, alleging that (a) a Minneapolis housing ordinance required the landlord to

## ISSUES

I. Was respondent obligated to protect decedent from the criminal acts of third parties?

II. Did respondent owe the decedent a statutory duty of care to maintain door locks in working condition? If so, were sufficient questions of material fact raised, rendering the district court's grant of summary judgment erroneous?

III. Is the intervening cause of a criminal act sufficiently foreseeable, so as to maintain the chain of causation?

IV. Did respondent have a contractual duty to maintain the door locks in working condition?

V. Should appellant's motion to strike portions of respondent's brief be granted?

## ANALYSIS

Summary judgment may be granted when there is no genuine issue of

material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. To prevail on a negligence claim, a plaintiff must show: (1) the existence of a duty; (2) breach of that duty; (3) that the breach proximately caused the injury; and (4) injury in fact. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982). The existence of a legal duty may be imposed by either the common law or a statute, *Steffey v. Soo Line R.R.*, 498 N.W.2d 304, 307 (Minn.App.1993), *review denied* (Minn. May 28, 1993), and is a question of law for the court to determine. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985). But the determination of whether a duty has been breached is generally within the province of the jury. *Smith v. Carriere*, 316 N.W.2d 574, 575 (Minn.1982).

## I. Common Law Duty and Special Relationship Exception

This appeal centers on what duty, if any, Newman owed Haynes. The district court granted summary judgment because it determined that Newman had no duty to protect Haynes. Specifically, the court concluded that no special relationship existed between Newman and Haynes that would give rise to a duty to protect.

Holding a landlord liable for the intentional criminal acts of a third party is a modern development, representing a change from the common law. *See Errico v. Southland Corp.*, 509 N.W.2d 585, 587 (Minn.App.1993) (generally, a person "has no duty to control the conduct of a third person in order to prevent that person from causing injury to another"), *review denied* (Minn. Jan. 27, 1994); *see also Donaldson v. Young Women's Christian*

*Ass'n*, 539 N.W.2d 789, 792 (Minn.1995) (a person generally has no duty to act for the protection of another, even if he or she realizes or should realize that action is necessary).

■ A landlord-tenant relationship, standing alone, is not sufficient to give rise to the duty to protect. *See Spitzak v. Hylands, Ltd.*, 500 N.W.2d 154, 156–57 (Minn.App.1993) (failing to find landlord liable where apartment complex neither exposed tenants to greater risks, nor presented a unique opportunity for criminals and criminal activity), *review denied* (Minn. July 15, 1993).[1] But a party may owe such a duty where a special relationship exists between that party and another that gives the other the right to protection. *Errico*, 509 N.W.2d at 587. When a special relationship exists, a party has the duty to take reasonable precautions against foreseeable criminal acts of third parties. *Id.* The rationale running through special relationships is that one party relinquishes part of its autonomy, or the ability to control the environment, in favor of another, usually dominant, party. *See id.* (special relationships exist when one entrusts her safety to another and the other accepts that entrustment). The imposition of liability on the dominant party not only redresses the imbalance of power, but places the precautionary burden more directly on such party. *Id.*

Historically, this principle did not apply to a typical landlord-tenant relationship. In pre-industrial-age leases, tenants did not usually relinquish their autonomy or their ability to control their surroundings. A typical tenant had full control over the land, including its own actions on the land.

1. Liability can be imposed on landlords for the criminal acts of third parties in certain situations. *See Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 168–69 (Minn.1989) (under the special relationship doctrine, owner and operator of commercial parking ramp facility owed a duty to provide adequate security to its customers to deter criminal activity in the parking ramp); *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 913–15 (Minn.1983) (where resident manager with criminal history entered tenant's apartment using a master key and raped tenant, liability imposed based on negligent hiring); *Vermes v. American Dist. Tel. Co.*, 312 Minn. 33, 41, 251 N.W.2d 101, 105 (1977) (liability imposed based on landlord's failure to make lessee aware of facts tending to make the premises insecure for lessee's jewelry business).

Thus, these relationships were properly excluded from the special relationships. Changes in society have caused modern leases to differ materially from those in the past. The hotel-and-guest relationship was one of the first to be considered special. Courts extended the special relationship to hotels because the reasons for the rule were acutely present; guests had no autonomy or ability to control their surroundings. Likewise, tenants in apartment buildings, whose leases are often of short duration, cannot be expected to secure common areas of the building by individually making the necessary expenditures, for example, to install and maintain locks on outside entrances. *See Tedder v. Raskin,* 728 S.W.2d 343, 348 (Tenn.App. 1987) (landlord may be liable for injuries to tenants from third-party crimes on the premises because landlord is in far superior position to take necessary steps to secure premises).

When Haynes signed the lease, he relinquished to Newman exclusive control over building security, the building's security devices, and the areas outside his apartment unit. These factors are sufficient to create the existence of a special relationship as the logical extrapolation of the existing common law governing the special-relationship between innkeeper and guest. *See generally Boone v. Martinez,* 567 N.W.2d 508, 510 (Minn.1997) (discussing innkeeper liability in the context of a tavern's duty to maintain safety and order for protection of its patrons). Because the special relationship exception applies, Newman had the duty to use reasonable care to prevent foreseeable criminal acts of third parties. Newman may have breached this duty if it took no action to remedy the defective lock, a genuine issue of a material fact.

But even if Newman had no duty to protect Haynes by providing reasonable security measures, it did have a duty to maintain the security measures already undertaken for the protection of its tenants. Specifically, by providing a secured back door to the building, Newman assumed the duty to maintain the locking mechanism on that door. *See Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 806 (Minn.1979) (finding municipality's duty of care with regard to fire code violations when municipality assumes to act for the protection of others, as distinguished from acting merely for itself when it inspects property for fire-code violations); *see also State by Humphrey v. Philip Morris, Inc.,* 551 N.W.2d 490, 493 (Minn. 1996) ("[O]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.").

Where a person or entity voluntarily assumes a duty, then that duty must be exercised with reasonable care and the failure to so act may result in liability. *Nickelson v. Mall of Am. Co.,* 593 N.W.2d 723, 726 (Minn.App.1999). We conclude that Newman had a duty to maintain the security locking mechanism on the apartment building's back door. The parties dispute whether, in fact, the locking mechanism was working properly at the time of Haynes' murder. This, of course, is another unresolved genuine issue of material fact. Not recognizing this, the district court again erred in granting summary judgment to Newman.

## II. Statutory Duty

Funchess also argues that Newman's duty arose by statute. The difference between a statutorily imposed duty and a duty arising under common law is that the duty imposed by statute is fixed. *Zerby v. Warren,* 297 Minn. 134, 139, 210 N.W.2d 58, 62 (1973). If an ordinance imposes a duty and one neglects to perform that duty, then he or she is "liable to those for whose protection the statute was enacted for any damages resulting proximately from such * * * neglect." *Henderson v. Bjork Monument Co.,* 222 Minn. 241, 245, 24 N.W.2d 42, 45 (1946) (citation omitted). A breach of this nature

generally constitutes conclusive evidence of negligence, or negligence per se. *Zerby*, 297 Minn. at 139, 210 N.W.2d at 62. Minneapolis, Minn., Code of Ordinances § 244.675 (1998), requires that all doorways leading to the exterior or entry of a multiple dwelling, such as the apartment building in question, "be secured by a locking device * * * that will engage and lock automatically when the door is in the closed position within the frame provided." The ordinance also mandates that "[a]ll locking devices required by this section shall be kept in a professional state of maintenance and repair." *Id.*

The parties dispute whether the locking mechanism on the back door was broken. Funchess presented the affidavit of Angela Bennett, who stated that on the day of the murder, she was able to enter the apartment through the back door without using a key, although nothing was propping the door open and no one opened the door for her. Newman, on the other hand, introduced an affidavit from Randy Gott, stating that tenants often thwarted the locking mechanism on the back door by propping the door open. Additionally, Gott's affidavit asserted it was not uncommon for people to be buzzed into the building by other tenants.

Considering the ordinance-imposed duty to maintain the locking mechanism on the back door, the district court's grant of summary judgment was premature. Determinations regarding breach and causation—that is, whether the lock in this case was actually broken—generally present questions of fact properly determined by a jury. *See Smith*, 316 N.W.2d at 575 (breach); *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn.1995) (causation). When reasonable minds could reach only one conclusion, the existence of proximate cause is, of course, a question of law. *Lubbers*, 539 N.W.2d at 402. But there must also be a showing that the defendant's conduct "was a substantial factor in bringing about the injury." *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn.1980).

Here, Newman owed a duty to Haynes to keep the back-door lock working properly. Assuming, for purposes of this appeal, that Newman breached this duty by allowing the back-door lock to remain in a state of disrepair, it cannot be said that Newman would have no reason to anticipate that breach of this duty would result in injury to its tenants. The parties disagree whether the alleged breach of this duty was a substantial factor in bringing about Haynes' death, or whether Haynes himself was responsible by allowing his assailants access into the building. More than one conclusion as to the causes of Haynes' death can be reached, and because reasonable minds could differ on the issue of causation, summary judgment in favor of Newman should not have been granted.

### III. Intervening Cause

A theoretical problem results when the actual harm is caused by a force other than that initiated by the negligent actor. These forces may supercede the original actor's liability. *See Pearson v. Henkemeyer*, 503 N.W.2d 504, 507 (Minn. App.1993) (generally, a third party's criminal act "breaks the causation chain" unless the criminal act "is reasonably foreseeable"), *review denied* (Minn. Sept. 30, 1993). An intervening cause is one that comes about after the negligent act. It must come between the negligent act of the actor and the resulting harm, shifting the responsibility for the harm to the intervening act. If the actual harm is caused by an intervening act, the negligent actor is absolved from liability. *See* Restatement (Second) of Torts § 448 (1965).

But where the occurrence of the intervening act is reasonably foreseeable, the chain of causation will not be broken. *Id.* In this case, the assault is entirely foreseeable under the totality of the circumstances. A lock is intended to prevent crimes against people and property within the area it secures. If the lock is

ineffective, a crime is a foreseeable result. This is especially the case where, as here, the building is located in an area notorious for criminal activity. When a landlord beaches his duty to maintain a lock, the landlord may be held liable for the foreseeable result—in this case, a violent assault resulting in death.

### IV. Lease As Contract

A lease is one form of contract. *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn.1999). As such, the parties can insert almost any provision they choose. Here, the lease required the landlord to "maintain the common areas and facilities in safe condition * * * [and] make necessary repairs with reasonable promptness." Where contract language is unambiguous, we will give it its plain and ordinary meaning. *Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn.1993). A reasonable construction of the lease requires Newman to maintain the locks on the building doors in working condition and to repair them promptly if they are not locking properly. A question of fact exists as to whether Newman breached its contractual duty to keep the back-door lock in working condition. Thus, the district court's grant of summary judgment to Newman was premature.

### V. Motion to Strike

Appellant requests that this court strike portions of respondent's brief that rely on alleged hearsay statements given by Newman's security guard. *See Walker v. Wayne County, Iowa*, 850 F.2d 433, 434 (8th Cir.1988) (in a summary judgment proceeding, only evidence admissible or usable at trial should be considered). But we need not consider the security guard's reports of alleged comments made by residents of the apartment in determining whether sufficient facts are in dispute to render summary judgment improper. Because we find the objected-to portions of Newman's brief irrelevant to our decision, we deny appellant's motion to strike.

### DECISION

Newman owed the decedent a common-law duty, a statutory duty, and a contractual duty to maintain the security locking mechanism on the back door of the apartment building in working condition. These duties were not abrogated by the foreseeable criminal acts of a third party. Because genuine issues of material fact exists with regard to the security door's condition and causation, we reverse the district court's grant of summary judgment and remand for further proceedings.

**Reversed and remanded; motion denied.**

G. BARRY ANDERSON, Judge (dissenting).

I respectfully dissent.

I believe the majority opinion in this case represents an extension of a very narrow exception that Minnesota courts have applied to negligence claims.

Historically, Minnesota courts have rejected negligence actions against a property owner for injuries to a tenant caused by the criminal activities of another, usually finding that the property owner had no duty to protect the tenant. *Spitzak v. Hylands*, 500 N.W.2d 154 (Minn.App. 1993); *H.B. v. Whittemore*, 552 N.W.2d 705, 709, 710 (Minn.1996) (no special relationship existed to impose a duty on a trailer-park manager to protect children from another resident even though the manager knew the resident had a prior conviction for child molestation).

The exception expanded by the majority here provides that a duty may exist "if there is a special relationship between the parties and * * * the risk of harm is foreseeable." *N.W. v. Anderson*, 478 N.W.2d 542, 544 (Minn.App.1991). That case warned, however, that the supreme court has developed "a rather rigid standard" and specifically went on to note that the

standard applied only when "specific threats are made against specific victims." *Id.* at 544.

There is no evidence in this case that the relationship between the decedent and the respondents was in any way special. At the end of the day this relationship was nothing more than an ordinary and routine landlord/tenant business transaction. If a special relationship exists here, under these facts, it is difficult to determine when a special relationship in any other ordinary landlord/tenant business transaction would not exist. Indeed, the principles enunciated here represent a worrisome expansion of landlord liability.

As to the alleged violation of the Minneapolis housing ordinance, because the issue was not raised at the district court it was waived and thus it need not be addressed by this court. *Thiele v. Stich,* 425 N.W.2d 580 (Minn.1988). But even if the principle in *Thiele* is not applied here and the merits of the claim are reached, the Minnesota Supreme Court has made clear in *Bills v. Willow Run I Apartments,* 547 N.W.2d 693, 695 (Minn.1996), that the principles of negligence per se do not apply unless the owner knew of the code violation and, among other things, failed to take reasonable steps to remedy the violation. There is little, if any, evidence in the record establishing either notice to the landlord or failure to cure by the landlord.

Ultimately, every crime is, to a greater or lesser extent, "foreseeable." The Minnesota Supreme Court has, succinctly and thoroughly, addressed the difficulty of foreseeability in the context of criminal acts of third parties by noting:

The question whether a private party must provide protection for another is not solved merely by recourse to "foreseeability". Everyone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide "police" protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by private arms of the owner. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable.

\* \* \*

How can one know what measures will protect against the thug, the narcotic addict, the degenerate, the psychopath, the psychotic?

*Pietila v. Congdon,* 362 N.W.2d 328 (Minn. 1985) (claim that private-property owner is liable in negligence for injuries suffered by a guest as a result of criminal attack [murder] ).

Under the facts of this case, there is no foreseeability, and thus no negligence, on the part of the landlord.

Finally, I would sustain the judgment of the district court simply because the plaintiff, under any legal theory, cannot establish causation. There isn't a shred of evidence anywhere in the record demonstrating how the murderers entered the building and appellant addresses this issue only by way of an affidavit in which it is noted that the murderers "must have" entered the building through the back door. There is no particular reason to believe this as there are no eye witnesses to the entrance of the murderers onto the property, no documentary or visual entrance that the murderers entered through the back door and, indeed, there isn't even any sign of forcible entry into the decedent's apartment. Even assuming the highly dubious existence of a duty and a breach of duty, plaintiffs must still demonstrate a causal connection between the

breach and injury and this they have not done. The district court should be affirmed on the basis of causation alone.

I would affirm the grant of summary judgment rendered by the district court.