*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1138**

Tory Brent Apps, et al.,
Appellants,

vs.

Jesse Stowers,
Respondent.

**Filed February 23, 2026
Affirmed
Harris, Judge**

Mille Lacs County District Court
File No. 48-CV-24-1267

Patrick R. Gillespie, Michael P. Gillespie, Gillespie Law Offices, LLP, Rogers, Minnesota (for appellants Tory and Sierra Apps)

Paul E. Storm, RGP Law, Ltd., St. Cloud, Minnesota (for respondent)

Considered and decided by Harris, Presiding Judge; Smith, Tracy M., Judge; and Segal, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HARRIS**, Judge

Appellant challenges the summary-judgment dismissal of her negligence claim for damage sustained to her vehicle after colliding with respondent's cow on a highway. Because there is no genuine issue of material fact and judgment is appropriate as a matter of law, we affirm.

**FACTS**

In the early morning hours of August 18, 2023, two officers with the Mille Lacs Tribal police responded to a call requesting assistance to stop a "wrong way driver" traveling northbound in the highway's southbound lanes. While the first officer prepared to assist in stopping the driver, the second officer observed another vehicle traveling northbound (in the northbound lanes). As the vehicle passed by, the second officer "heard a loud impact" and "observed that the vehicle had struck a cow, which was crossing the highway at that time." That officer responded to the collision and identified the driver as appellant Sierra Jewel Apps.[1]

Apps informed the officer that no one was injured and that she did not see the cow before the collision. Apps's passenger told the officer that "they were looking at [the] [o]fficer's vehicles when the cow ran into the roadway in front of them." The officer

---

[1] Appellant Tory Brent Apps is also listed as an appellant, but he is not directly involved in this matter. Tory Brent Apps is the owner of the vehicle involved in the collision, which was driven by his daughter, appellant Sierra Jewel Apps. Sierra Jewel Apps is the only party pursuing the appeal.

observed that Apps's vehicle "sustained disabling damage to the front and front left quarter panel."

The first officer also responded to the collision. He observed that the cow was "severely injured and unlikely to survive." He grabbed his department-issued rifle and "dispatched the cow." The officer later visited a nearby residence and identified respondent Jesse Stowers as the owner of the cow.

Stowers had owned his property for 18 months prior to the collision. At the time of the accident Stowers owned one cow. His property includes a small barn for animals and a pasture of approximately three acres, enclosed by a mesh wire fence about five feet high. The mesh wire fence is supported by metal stakes driven into the ground. Stowers additionally installed two electrified wires: one approximately 20 inches from the ground, and the other 40 inches from the ground. He maintained the same mesh wire fence and electrified wires and was never aware of his cow "jumping over or breaking through the fence" during the 18 months he owned the property.

Apps filed an insurance claim for damage to the vehicle—approximately $11,700. Her claim was denied. To recoup her loss, Tory and Sierra Apps sued Stowers in conciliation court, claiming that he negligently permitted his cow to escape the enclosure and run at large as prohibited by Minnesota Statutes section 346.16 (2024). At the hearing, the conciliation court heard testimony from Stowers and received photos of the fence and the fence energizer. After a court trial in June 2024, the conciliation court found Stowers negligent. One month later, Stowers filed a demand for removal/appeal from the

3

conciliation court and requested a de novo trial by jury under Minnesota General Rule of Practice 521.

Once the matter was removed to district court, the parties developed a joint discovery plan. Both parties stipulated that expert witnesses would not be required in the matter.[2] At the end of August 2024, the district court issued a scheduling order that provided both parties until February 2025 to complete discovery. During that time, Apps did not produce any witness statements relating to the incident and did not produce exhibits or documentation in response to Stowers's discovery request.

In April 2025, both parties filed a motion for summary judgment. Stowers argued that Apps failed to produce evidence showing that the wire fence was inadequate or defective or that he permitted his cow to run at large. He also informed the district court that Apps did not request or conduct an investigation of the fence, nor did Apps interview anyone about the adequacy of the fencing. Apps filed a response to Stowers motion, claiming that additional evidence of negligence would be produced at trial. Apps also attempted to use the conciliation court's memorandum summarizing the parties' testimony as impeachment evidence against Stowers.[3]

---

[2] Apps's attorney had suggested stipulating that expert witnesses would not be necessary "[s]ince there [was] only a vehicle damage claim at issue." And in response to interrogatories by Stowers, Apps answered, "The parties have stipulated that expert witnesses will not be necessary in this matter."

[3] According to Apps, the statements contained in Stowers's affidavit conflict with his earlier testimony before the conciliation court.

4

The district court granted Stowers's motion for summary judgment, denied Apps's motion, and dismissed Apps's claims with prejudice. Apps appeals.

**DECISION**

Apps first argues that the photographs of Stowers's fence could permit a jury to conclude that Stowers negligently installed and maintained the fence and, therefore, it was inadequate to prevent the cow from escaping the enclosure. She also argues that section 346.16 imposes strict liability on owners of animals running at large, and that even if she is unlikely to prevail under section 346.16, she may still prevail under a common-law theory of negligence.[4]

"We review the grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law." *Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 628 (Minn. 2017). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STARS Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). The nonmoving party cannot avoid summary judgment by pointing to "unverified and conclusionary allegations in his pleading or by postulating evidence which might be developed at trial." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (quotation omitted). Instead, the nonmoving party must establish that there is a genuine issue of

---

[4] We note that, in its single-page order, the district court provided no analysis in granting summary judgment to Stowers. The district court failed to discuss, let alone address, the facts and the relevant law. Because our review is de novo, we proceed with our analysis.

material fact through substantial evidence. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997).

To succeed on a negligence claim, Apps needed to show that (1) Stowers owed a duty of care, (2) Stowers breached that duty of care, (3) Apps suffered an injury, and (4) the breach proximately caused that injury. *Fenrich v. The Blake Sch.*, 920 N.W.2d 195, 201 (Minn. 2018) (quotation omitted). When the doctrine of negligence per se applies, a "violation of the statute constitutes conclusive evidence of negligence . . . unless excusable or justifiable under the circumstances of the case." *Pigman v. Nott*, 233 N.W.2d 287, 288 (Minn. 1975) (citation omitted) (applying this rule to section 346.16).

Under section 346.16, owners of certain species of animals, including cattle, cannot permit the animals "to run at large." *Peterson v. Pawelk*, 263 N.W.2d 634, 637 (Minn. 1978). "Running at large" means permitting any animal "to stroll, wander, rove or ramble at will without restraint or confinement." *Id.* "[I]t is not necessary that the owner have knowledge that his animal is running at large, but he must in some way have allowed it to do so." *Id.* The mere fact that an animal is running at large is not, by itself, evidence that the animal's owner permitted it to do so in violation of the statute. *Id.*

The facts here are similar to *Clark v. Goihl*, A21-0136, 2021 WL 5442347 (Minn. App. Nov. 22, 2021).[5] Clark and his passenger were driving late at night when they noticed a vehicle parked on the opposite side of the road with its hazard lights activated. *Id.* at *1. Just as Clark passed the parked vehicle, he struck a cow on the road. *Id.* The occupants of

---

[5] Nonprecedential opinions are nonbinding and are cited as persuasive authority. Minn. R. Civ. App. P. 136.01, subd. 1.

the parked car had earlier seen a cow near the roadway and pulled over, activating their hazard lights in an effort to locate it. *Id.* Although they later heard the impact of Clark's car striking the cow, they did not witness the collision. *Id.* The son of the cow's owners learned of the incident and searched for the cow but was unable to locate it. *Id.* After arriving at the scene, the son inspected the gate to his family's farm and the surrounding electrical fencing and found both to be in proper working order. *Id.* The cow was never located, but the family verified the next day that all of their cows were accounted for. *Id.*

Clark sued the family-owners of the cow, claiming that they negligently permitted the cow to run at large. *Id.* at *2. For purposes of their motion for summary judgment, the owners agreed to assume that they owned the cow. *Id.* During a deposition, the father testified that his cattle escaped the enclosure only "two or three times" in the 15 years since owning the farm. *Id.* The son testified that the "cows had escaped more than three times before, and perhaps as often as once a year." *Id.* This court concluded that there was no evidence that the owners permitted the cow to run at large. *Id.* at *4. Rather, the undisputed evidence showed that the father and son "checked the fence on the night of the accident, and they found it working and the gate latched." *Id.* at *2.

Here, the undisputed evidence shows Stowers was never aware of his cow "jumping over or breaking through the fence" in the 18 months before the incident. As part of his daily routine caring for the cow, he inspected the fence line every evening. And on the evening prior to the collision, Stowers again walked the fence line and observed no "gaps or holes in the mesh wire fence" or "any damaged or downed fence stakes." Stowers also tested the electrical wires using the "energizer" located next to the fence's gate and

7

confirmed the electrical wires were functioning by hearing the "distinct clicking sound." After inspecting the fence, Stowers closed the fence gate and affirmed there was no other means of exit for the cow. The day after the incident, Stowers double checked the fence and found nothing different from his observations the evening prior.

There was arguably more evidence that the owners in *Clark* permitted their cow to run at large compared to Stowers's case because, in *Clark*, the father and son testified that the cows had previously escaped, as often as once a year. *Id.* at *2. Still, the *Clark* court determined the owners were not negligent. *Id.* at *4. But here, there was no evidence that Stowers's cow had ever escaped.

Apps insists that the district court "improperly disregarded evidence of [Stowers's] negligence." She contends that the "photographs of the fence arguably show that cows routinely lean over it to eat grass on the other side." She adds that "[t]his fact gives rise to the inference that the electrification system . . . was not operational since it did not prevent a cow from putting its head over it." We are not persuaded for two reasons.

First, she advances nothing more than speculative assertions. Apps theorizes that because one of the photographs depicts tall grass on the other side of the wired fence, then Stowers's cow must have "routinely lean[ed] over it to eat grass." This inference lacks record support.[6] Apps then suggests that the tall grass rendered the electrical fence inoperable by "shorting out" the wires. She points to the electric fence information booklet

---

[6] This inference is further undermined by the fact that the accident occurred in August 2023, whereas the photograph depicts snow on the ground. This raises serious doubt as to whether the photograph was contemporaneous with the accident and, accordingly, whether it provides reliable evidence of the condition or maintenance of the fence in August 2023.

as support, claiming that the manufacturer recommends that the "electric fence energizer" be installed indoors. We do not find this persuasive because the information booklet says that it is a "recommendation" and that the "energizer's enclosure is basically weatherproof," suggesting that it could be placed outdoors. Even taking this evidence in the light most favorable to Apps, it does not create a genuine dispute of material fact regarding whether Stowers negligently installed the electric fence.

Second, Apps's argument would likely require expert-witness testimony regarding the feeding habits of cattle, the electrical conduction of the wired fence, or whether the fence was adequately installed or maintained. *See Rygwall v. ACR Homes, Inc.*, 6 N.W.3d 416, 430 (Minn. 2024) ("Where a question involves obscure and abstruse medical factors such that the ordinary layman cannot reasonably possess well-founded knowledge of the matter and could only indulge in speculation in making a finding, there must be expert testimony." (quotation omitted)). But Apps produced no expert witnesses on this matter. She relies only on the photographs of the mesh wire fencing, which, as we have explained, do not create a genuine issue of material fact regarding negligence.

To convince us otherwise, Apps argues that section 346.16 "imposes strict liability and tr[e]ble damages for violations of its standards." We are not persuaded. The supreme court stated that the legislature's use of the word "permit" in the statute demonstrates that it did not intend to impose strict liability to an owner of an animal running at large. *Peterson*, 263 N.W.2d at 637. She also argues that even if she cannot prevail on negligence per se, she may still prevail under common-law negligence. Apps offers no meaningful analysis on how she would prevail under the common law. Apps argues only that she could

9

prevail under the common law if she could show that Stowers "failed to take actions, such as properly installing and grounding his electric fence, or using inadequate 'chicken wire' fencing." But again, she points to no evidence in the record to support her claim. And the only authority to which she cites simply discusses the types of negligence claims.

Overall, Apps failed to provide admissible evidence demonstrating that a genuine issue of material fact exists. As such, the district court's order granting summary judgment to Stowers was not erroneous.[7]

**Affirmed.**

---

[7] As a final point, Stowers argues that Apps attempted to use the conciliation court's vacated order as evidence at trial, which is impermissible because the matter was removed to district court for a de novo trial. *See* Minn. Gen. R. Prac. 521; *Akhtar v. Dairkee*, A16-1201, 2017 WL 1210140, at *2 ("When a district court tries a case de novo, it tries the case as if it had not been tried before." (quotation omitted)); *Nicollet Restoration, Inc. v. Turnham*, 475 N.W.2d 508, 510 (Minn. App. 1991) ("[T]he district court is not required to give deference to the conciliation court's decision nor is it bound by the conciliation court's rules of practice."). In Apps's reply brief, she claims that she only relied upon "the memorandum *memorializing* [Stowers's] testimony," not the conciliation court's judgment itself. This is a trivial distinction with no meaningful difference. Regardless of whether she relies on the judgment or the memorandum, the district court conducts a trial de novo and Apps has offered no basis on which the conciliation court's summary of testimony would be admissible in this case.

10